# CHARLESTOWN.

## STATE *v.* SHORES.

Submitted September 14, 1888.—Decided September 19, 1888.

1. INDICTMENT—JOINDER OF OFFENCES—QUASHING—CRIMINAL PRACTICE.

   If an indictment for felony contains different counts, which are in fact for separate and distinct offences, and this fact appears on the face of the indictment or on the opening of the case or at anytime before the jury is sworn for the trial thereof, the court may quash the same, lest it may confound the prisoner in his defence, or prejudice his challenges of the jury. (p. 495.)

2. INDICTMENT—ELECTION.

   In such case, if the defect is discovered after the jury is sworn, and before the verdict is rendered, the court may require the prosecutor to elect on which count he will proceed to trial. (p. 495.)

3. INDICTMENT.

   But where the charges are of the same general character, and the counts are manifestly inserted to meet different phases of the evidence, the indictment will not be quashed, neither will the

prosecutor be required to elect on which count he will proceed to trial.

4. INDICTMENT.

An indictment contains two counts, one for breaking and entering the dwelling-house of another and another for breaking and entering at the same time the store-house of the same person. *Held,* on motion to quash, that the indictment is good; also that the prosecutor will not be required to elect on which count he would proceed to trial. (p. 496.)

5. INDICTMENT.—RECORD.

In such a case, the record showing the prisoner was indicted for " felony " is sufficient. (p. 496.)

6. INDICTMENT—FAILURE TO INDORSE WITNESS' NAME ON INDICTMENT.

The statute directing the names of the witnesses, on whose evidence the indictment was found, to be written at the foot thereof, is directory, and the omission of such names does not vitiate the indictment. (p. 496.)

7. JURIES AND JURORS—STRIKING FROM THE PANEL—CONSTITUTIONAL LAW.

The statute passed by the Legislature at the extra session in 1887, permitting the prosecuting attorney to strike two jurors from the panel of twenty, and the prisoner six, is constitutional. (p. 498.)

8. JURIES AND JURORS—SHERIFF—CUSTODY OF JURY.

It is not necessary that a sheriff or his deputy having a jury in charge during a trial for felony, should every day be sworn to keep the jury together, etc., as there is no law that requires it. (p. 499.)

9. JURIES AND JURORS—SHERIFF—DISQUALIFICATION OF SHERIFF.

It is no disqualification of the sheriff to take charge of a jury in a felony case that he is a witness either for or against the prisoner in the case. (p. 499.)

10. EVIDENCE—JOINT INDICTMENTS.

Where three were jointly indicted for a felony, and one was on trial, it is not an error, for which the judgment would be reversed, that the State was permitted to prove to the jury, that the other two were in jail charged with the commission of the same offence. (p. 499.)

11. EVIDENCE—PERMITTING JURY TO TAKE INDICTMENT TO JURY ROOM.

Where three were jointly indicted for a felony and one had been tried and convicted, and the verdict of " guilty " was written on the indictment, and on the trial of another one of the three the said indictment was taken by the jury to their room while they were considering their verdict, and the prisoner moved the court

to send for the indictment and take it from the jury, and the court, denied the motion, *held* no error.   (p. 499.)

12. ATTORNEYS AT LAW—LIMITING ARGUMENT OF COUNSEL.

It is in the discretion of the trial-court in a felony-trial as in any other to put a proper limit to the time of counsel in their arguments to the jury; a discretion with which the appellate court will not interfere, unless the time was made so short as to manifestly prejudice the rights of the prisoner.   (p. 500.)

13. ATTORNEYS AT LAW—IMPROPER REMARKS OF COUNSEL.

Counsel necessarily must be allowed considerable latitude in the argument of a case, and, unless the court in a felony trial permits counsel for the State to so far transgress the rule of propriety as clearly to prejudice the prisoner, the judgment will not be reversed because of improper remarks by counsel made to the jury.   (p. 501.)

14. BURGLARY—WHAT CONSTITUTES—INSTRUCTIONS.

Where it appeared upon a trial for burglary that three persons much intoxicated went into a store and called for cider, which they drank and paid for, went out and came in again and called for more, which was poured out to them and delivered to them in glasses on the counter, and a pistol was discharged in the house, and they all went out leaving the cider in the glasses on the counter, and they returned and found the store lighted, it being about 10 o'clock at night, and pushed against the door which was locked, and it broke open, and they went in, followed by other persons against whom there was no charge or suspicion, and there in the light and in the presence of the other persons drank the cider, the refusal of an instruction to the jury, that under these circumstances, if the defendants in good faith believed they had a right to drink the cider, that it was theirs, they did not have the intent to steal the same, is error.   (p. 503.)

15. BURGLARY—INTENT.

The breaking and entering the store-house on such a charge is not sufficient, but it must also be shown on the trial of the indictment which charges it was broken and entered with intent to commit larceny, that the intent existed in the mind of the prisoner when he broke and entered the store-house.   (p. 504.)

*French & French* and *C. W. Smith* for plaintiff in error.

*Attorney General Alfred Caldwell* for the State.

JOHNSON, PRESIDENT :

On the 12th day of March, 1888, Stape Hall, Bailey Hall and Will Cox were indicted in the Circuit Court of Mercer county for burglary.   The indictment contained two counts,

—the first charges that the defendants, "on the 15th day of February, 1888, about the hour of 10 o'clock in the night-time of that day, feloniously and burglariously did break and enter into the dwelling-house of one L. Schereschewsky, situate in the said county, with intent the goods and chattels of him, the said Schereschewsky, in the said dwelling-house then and there being, then and there * * * to steal," etc. The second count charges that the defendants, "on the 15th day of February, 1888, about the hour of 10 o'clock in the night-time of that day, feloniously and burglariously did break and enter into the store-house of one L. Schereschewsky," with intent to steal, etc. The defendants demurred to the indictment and to each count thereof, which demurrer was overruled, and the prisoners pleaded "not guilty." The prisoners elected to be tried separately.

On the 19th day of March, 1888, the defendant Will Cox in open court stated that his name was not Will Cox, but J. W. Shores. Thereupon the court ordered that the name of J. W. Shores be inserted in the indictment instead of Will Cox, which was accordingly done. The issue as to J. W. Shores was tried by a jury, which, on the 24th day of March, 1888, found the prisoner guilty as charged in the second count in the indictment. The prisoner moved to set aside the verdict and for a new trial; also moved in arrest of judgment; which motions the court overruled and sentenced the prisoner to be confined in the penitentiary for one year. The prisoner saved a bill of exceptions to certain rulings of the court, which he here assigns as error upon the writ of error obtained by said defendants.

The first assignment of error is the overruling the demurrer to the indictment. The grounds alleged are—*First*, that the indictment charged two separate and distinct felonies. In the case of *State* v. *Smith*, 24 W. Va. 814, the indictment contained two counts for murder,—one for killing McDaniel; the other, McDonald. The Court, by Woods, Judge, said : " These different counts are generally intended to charge the commission of the same offence with such varied description of the person or property which is the subject of the offence, or of the title of the ownership of the property, or of the means, instruments, and agencies by

which the offence was committed, as will' meet the various
aspects in which the evidence may present itself upon the
trial. * * * In all cases, however, in which there are
two or more counts in the indictment, whether there is ac-
tually one offence or several, each count is regarded as a
separate indictment, and is supposed to represent a distinct
offence. *Linkons's Case*, 9 Leigh 612. But I have been un-
able to find in Virginia or this State any case in which more
than one criminal transaction was embraced in a single in-
dictment for felony, although in many cases where the of-
fences are of the same character, differing only in degree,
the indictments have contained two or more counts in which
the same transaction in the form of distinct and separate
felonies is represented. But as in every such case the sepa-
rate counts are regarded as separate indictments for distinct
offences, it will, in most cases, be impossible for the court,
from an inspection of the indictment, to determine whether
the various counts represent the same transaction under
different forms, or whether in fact they represent wholly
different and distinct offences. If all or any of such counts
are perfect upon their face, a demurrer to or motion to quash
the indictment for the supposed misjoinder of counts must
be overruled, although some of the counts may in fact rep-
resent separate and distinct offences, for the reason that this
fact can only be made to appear from the evidence intro-
duced on the trial." See also *State* v. *Halida*, 28 W. Va. 499.

The rule, as appears in points 4 and 6 of the syllabus in
*State* v. *Smith, supra*, is: 4. " If the indictment contains dif-
ferent counts which are in fact for separate and distinct of-
fences, and this fact appears on the opening of the cause, or
at any time before the jury are sworn for the trial thereof, the
court may quash the same, lest it may confound the prisoner
in his defence, or prejudice his challenges of the jury; and
in such case, if the defect is discovered after the jury is
sworn and before the verdict is found, the court may require
the prosecutor to make his election on which charge he will
proceed." 6. " If the different counts in an indictment, pur-
porting to be for separate and distinct offences, are inserted
in good faith for the purpose of meeting a single charge, the
court will neither quash the indictment nor compel the

prosecutor to elect upon which count he will proceed to trial." Here the charges are of the same general character. The first count charges breaking into the dwelling-house of Schereschewsky, and the second, into his store-house. It is evident from the face of the indictment, that the two counts were made to meet the proof, as we may well suppose, which was a fact, as disclosed by the evidence, that the dwelling and store-house were in the same building. The demurrer was properly overruled. The record shows the defendant was indicted "for felony." That is a sufficient finding of the indictment, notwithstanding the two counts therein.

But the further objection is made to the indictment that the names of the witnesses, on whose evidence the indictment was found, were not written at the foot thereof in accordance with the requirements of the statute. This court held in the case of *State* v. *Enoch*, 26 W. Va. 253, founding its decision on *Dever's Case*, 10 Leigh 685, and *William's Case*, 5 Grat. 702, that the statute was directory, and the omission did not vitiate the indictment. We are asked to overrule these authorities, and hold the indictment fatally defective. We held, after a review of the authorities, in *State* v. *Cain*, 20 W. Va. 679, that it is not the duty of the prosecuting attorney on a criminal trial to examine all the witnesses who were present at the commission of an alleged offence, nor all the witnesses who were sent to the grand jury when the indictment was found, and whose names are at the foot of the indictment, and who may have been examined at the coroner's inquest, and who have been recognized to appear at the trial by the State; that it is the province of the prosecuting officer and not of the court to determine who shall be examined as witnesses on behalf of the State.

If the attorney for the State is not obliged to call the witnesses whose names are written at the foot of the indictment, but may call other witnesses in their place, what harm can be done to the accused by the omission of their names? The bill of rights does not require it. It requires that "the accused shall be confronted with the witnesses against him;" that is, at the trial the witnesses shall be produced, their depositions can not be given, and hearsay evi-

dence shall not be permitted. The statute held directory in *Com.* v. *Dever*, 10 Leigh 685, required "the title or profession of the prosecutor to be written at the foot of an information or indictment." In *William's Case*, 5 Grat. 702, the statute, held to be merely directory, is substantially the same as that in force when *Enoch's Case* was decided, and is now in our Code. *William's Case* was decided 40 years ago, and we have no inclination to disturb it now. Whatever may have been decided elsewhere, we hold the law to be settled in Virginia and this State that such a statute is not mandatory but directory. For the reason stated while discussing the demurrer to the indictment, and on the authority of *State* v. *Smith*, 24 W. Va. 814, the court did not err in refusing to require the attorney for the State to elect on which count of the indictment he would proceed.

It is insisted the court erred in permitting the attorney for the State, against the objection of the prisoner, to strike two jurors from the panel of 20 qualified jurors, on the ground that the act of 1887 permitting it is unconstitutional. It is not claimed that it is unconstitutional because it denies the prisoner any right secured to him by the Constitution, but because the act was passed at an extraordinary session of the Legislature, and it is claimed the subject was not embraced in the proclamation of the governor. The Constitution provides that " the governor may, on extraordinary occasions, convene at his own instance the Legislature; but, when so convened, it shall enter upon no business except that stated in the proclamation by which it was called together." Section 7, art. 7. The governor, under this authority, issued his proclamation convening the Legislature in extra session on the third Wednesday in April, 1887, to consider and act upon the business stated in the proclamation, among other business " to protect the public treasury against unnecessary expenditures by regulating the costs, charges, and proceedings in criminal cases before justices of the peace and Circuit Courts." Acts 1887, p. 235. The Legislature so convened, on the 7th day of May, 1887, amended sections 1, 3, 4, and 8 of chapter 159 of the Code. The first clause of section 3 was amended so as to read : " In case of felony, twenty jurors shall be drawn from those in attendance for the trial of the

63

accused. If a sufficient number of jurors for such panel can not be procured in this way, the court shall order others to be forthwith summoned and selected, until a panel of twenty jurors free from exceptions be completed; from which panel the accused may strike off six jurors, and the prosecuting attorney may strike off two jurors," *etc.* The section, by its terms applies only to indictments for offences committed after the act took effect. This act the governor approved, thus deciding for himself that it was embraced in the subjects mentioned in the proclamation. Chapter 6, Acts 1887, p. 243.

All the presumptions are in favor of the constitutionality of the act. If by any reasonable construction of the language of the proclamation the subject legislated upon in section 3 is embraced therein, the act is constitutional. If the direct tendency of this act is to lessen the expenses of criminal trials, and thus to any extent protect the public treasury against unnecessary expenditures, and no constitutional right of the citizen is abridged thereby, then the act is within the list of subjects embraced in the proclamation, and the act is constitutional. We can not see how the act in any wise abridges the constitutional rights of the citizen. *State* v. *Davis, ante,* 24. We judicially know that one great cause of expense in criminal trials is hung-juries, and as a consequence new trials. The panel must contain 20 jurors free from legal exception. When all the challenges for cause have been made by both the State and the prisoner, and the panel contains 20 jurors, there remains 8 peremptory challenges for cause entirely within the breast of the challenger. He may strike off the number he is permitted by law to strike, without assigning any reason therefor.

As the law formerly stood the prisoner alone was permitted to exercise the right of peremptory challenge. If he had a warm personal friend on the jury who would be unconsciously prejudiced in his favor, of course he would be left on the jury, and so would all such, unless they were more than 12. The prosecuting attorney might see two of the most intimate friends of the accused on the jury, men who he might have every reason to believe would refuse to render a verdict against the prisoner. He is powerless to

prevent them remaining on the jury. He goes through the trial, and because these men were on the jury there is no verdict, and there must be another trial with all its attendant expense to the State. There can be no doubt that giving the prosecuting attorney a peremptory challenge of two jurors tends to prevent hung-juries and mistrials and to lessen the expense of criminal trials, and thus protect the public treasury. We see no objection to the act because it was passed at the extra session, and it is constitutional and valid.

It is assigned as error that the sheriff or deputy was not sworn each day they had the jury in charge. It is not necessary that during the progress of the trial of a felony case the sheriff or deputy should be sworn each day to keep the jury together, etc., that being their duty under the law. State v. Poindexter, 23 W. Va. 805.

It is also assigned as error that George L. Karnes, the sheriff of the county, was examined as a witness, and the jury was in his custody. There was no exception either to his being sworn or having the jury in custody. The mere fact of his being the sheriff and having the jury in his custody could not disqualify him from being a witness, neither could the fact that he was a witness disqualify him to keep the jury in his custody.

It is assigned as error that the court permitted evidence against the objection of the prisoner, that Stape Hall and Bailey Hall, the men who were jointly indicted with the prisoner, were in jail. Why this evidence was offered does not appear, but it did not prejudice the prisoner. Neither was the prisoner prejudiced by the refusal of the court to send to the jury-room and take from the jury, while they were deliberating, the indictment, on which was written the verdict of another jury finding Bailey Hall guilty of the offence charged in the indictment. They were being separately tried. If the defendant had moved the court not to let the jury have the indictment but a copy, it would raise another question that we will not here decide. He might also have asked the court to have instructed the jury not to regard the indorsement on the indictment of the finding against Hall. The jury had seen the indictment with the

indorsement, before any motion was made with reference thereto. Every member of the jury may have been in court and heard the verdict read against Hall, and still that would not have disqualified them as jurors.

It is assigned as error that the court limited the arguments. It was held ( *Words' Case*, 3 Leigh 744) that " the accused has the right to be heard by counsel before the jury, and the court has no right to prevent him from being so heard, however simple, clear, unimpeached, and conclusive the evidence in its opinion may be ; but the court has a superintending control over the course of the argument to prevent the abuse of that or any other right of counsel." If the court had no right to limit counsel in a criminal case, the administration of justice in many instances would be greatly hindered. It rests in the sound discretion of the court in a criminal case to put a proper limit to the time consumed by counsel ; a discretion with which the appellate court will not interfere, unless the time was made so short as to manifestly be prejudicial to the rights of the prisoner. In this case the court limited the counsel on each side to four hours. There is nothing in the record to indicate that the limitation was unreasonable.

The prisoner offered to show that the cider sold by L. Schereschewsky was intoxicating, and that said Schereschewsky kept other intoxicating drinks in his store, to which evidence the attorney for the State objected. The objection was sustained, the court refused to permit the evidence to be given to the jury, and the prisoner excepted. The court properly refused to admit the evidence, as it could throw no light on the issue whether the prisoner broke and entered the store with intent to commit larceny.

In the argument of the case one of the attorneys for the State during the course of his argument stated that he and his associates were employed to prosecute this case, and that the good people of Bramwell to a man had employed them to prosecute this case. To this statement the prisoner at the time objected and excepted, and the court said " the counsel's statement is stricken out as improper." Another of the attorneys for the State, in the concluding argument of the case, argued that if the prisoner and his associates were

capable of committing the several offences which the evidence showed they had openly committed on the night of the 27th of February, 1888, and as admitted by their counsel in his argument, then it followed that they were capable of committing openly the crime with which they stood indicted. The prisoner at the time objected to the argument of the counsel, but the court held the argument proper, and permitted him to proceed. The argument referred to was made in reply to argument of the prisoner's counsel of the unreasonableness of the State's theory that the prisoner would commit the crime charged against him in the indictment as shown by the evidence. To which ruling of the court the prisoner excepted. As to the statement of the first counsel, the court ruled it out as improper. That is all the court could do, and the prisoner was not prejudiced. As to permitting the second counsel to proceed, the court did not err. As the record shows, it was a proper reply to arguments of prisoner's counsel. Counsel necessarily have great latitude in the argument of a case, and it is of course within the discretion of the court to restrain them; but with this discretion the appellate court will not interfere, unless it clearly appears from the record that the rights of the prisoner were prejudiced by such line of argument.

The tenth assignment of error is to the giving of the instructions for the State, and refusing to give certain instructions for the prisoner. The evidence is all certified, and before proceeding to discuss the instructions, we will state the substance of the evidence. I will give the substance, first, of the evidence of George Strader, who was employed in the store of L. Schereschewsky. The said Schereschewsky was the owner of a house in Bramwell, Mercer county, W. Va. The house contained five rooms,—three up-stairs and two down. The three upper rooms were used for dining-room, kitchen, and chamber in which he slept. The owner kept a store of general merchandise in the two lower rooms. Witness was, from the 1st of February, 1888, to the time of the trial, a clerk or salesman of the owner in said town. On the night of the 27th day of February, 1888, while he was in the store-room, about 8 o'clock in the night, the prisoner and Bailey Hall came into the store-room, and soon thereafter

Stape Hall came in. One of them called for cider, which was sold to them by L. Schereschewsky, and paid for, and they drank some cider, and also something witness thought was bitters. They offered witness and L. Schereschewsky some of the bitters which they did not drink. The prisoner and said Halls then left the store-room, and sometime after-wards, they or one of them returned again, and called for a fiddle; said they wanted to go to some kind of a show or exhibition that was in town that night. There was no fiddle in the house, and they went off again. About half-past 9, or perhaps 10 o'clock, the prisoner and the Halls returned to the store and got some more cider. By this time they were so drunk they did not know what they were doing; they were very boisterous and did not know what they were talking about. A man with a black mustache was in the store at that time, whom the witness did not know. A pistol went off in the house in the hands of either the prisoner or the unknown man. Before the pistol was discharged, prisoner had called for cider, which the witness poured out for him,—two glasses full in four glasses. Witness supposed they wanted to spike it. They put something else into it, witness did not know what, and set it upon the counter,— the usual place for delivering cider and goods to customers. About the time witness poured out this cider, the pistol went off, and witness said to one of them, he thought it was to Bailey Hall, to get them out and stop the shooting, and said Bailey Hall said he would, and that a drink did not make him such a fool. They then started out. Prisoner fired off his pistol one time when at the door in the direction of the street. Witness closed the door and locked it immediately after they had gone out. That the cider was worth five cents. After witness had locked the door, he left the lights burning in the store-room, and went out through a door in a back room and went up the back stair-way, and from this place saw two of the four who had gone out of the store-room standing near the east front corner of the store-house, and heard the others near the west front corner, and they were all talking aloud and in a boisterous manner. Witness then went out, and was gone some time, and when he returned to the store-house found the prisoner, the two Halls, Schere-

schewsky, and John Kenon in the store-room, and Bacon tried to arrest them, but they resisted. Witness examined the store-door. The bolt was thrown as if the door was locked. The door was a double one. One side was fastened by a foot-bolt at the bottom and a spring-latch at the top. Witness saw no damage done in any way to the door.

On cross-examination he said so far as he knew the business houses in the town were open at the time of the breaking; that Schereschewsky kept cider in the store for sale, and that witness was authorized to sell it; that witness was in the habit of delivering cider to customers to drink in glasses on the store counter; that sometimes they paid for it before and sometimes after they drank, but that he had never demanded pay from any one for cider before they drank it. It was also shown that when the prisoner and the Halls returned to the store, and found the door fastened, they pressed against it with their knees and it was forced open. This was seen from a store across the street. The lights were then burning in Schereschewsky's store-room.

I do not pretend to refer to all the evidence, but a careful reading of it impresses the mind in this way : Three men, the prisoner and two others, were quite drunk; they went into a store, called for cider; it was poured out; it was paid for, and they drank it; they went away, and after some time came back, called for more cider, which was poured out to them in glasses on the counter; they were about to drink it when the pistol of one of them was discharged; some excitement occurred, it being a drunken brawl; they went out, the cider still in the glasses on the counter for them; the clerk immediately closed the door and locked it, but left the lights burning brightly in the store; at the time the stores in the town were lighted. They soon came back, still intoxicated; saw the lights burning in the store ; were quite anxious to get the cider; pushed against the door; the side that was bolted at the bottom and latched at the top, being insecurely fastened, was pushed open. There was no harm done to the door. They went into the store, and two or three other men witnessed them drink the cider, and that was all they took. There is not the slightest proof that they took anything else, or went in with intent to take anything else.

The first instruction for the State instructs the jury in substance that, under the circumstances we have set forth, if the jury believe the cider was not paid for, and the prisoner went back and took it off the counter and drank it without the consent of L. Schereschewsky, then such taking was larceny. This instruction was clearly wrong. It ignores the fact, which is very probable, that the prisoner honestly believed that the cider had been delivered to him, and it was his. If he did so believe, then the intent to steal was wanting, and it was not larceny. Besides it appears that the cider was taken from the counter when the lights in the store were burning, and in the presence of several others who followed the prisoner into the store after the door had been pushed open, and drank in their presence. The fact that it was so taken from the counter under the circumstances, and openly and publicly appropriated to the use of the prisoner, furnishes the strongest evidence of the *bona fide* claim of right to the cider so taken. *Causey* v. *State*, 5 S. E. Rep. 121. *Vaughn's Case*, 10 Grat. 764; Judge Moncure in his dissenting opinion in the case, said : "That property is taken openly, in the presence of the owner, affords a strong presumption that it was not taken feloniously. This presumption may be repelled by evidence ; but strong evidence should be required for that purpose, when the property taken is the parties' own bond."

The other instructions given for the State propounded the law correctly, and are to the effect if the prisoner broke and entered the store-house with intent to commit larceny, he is guilty as charged.

The court gave seven instructions at the instance of the prisoner, and refused seven. The first instruction refused and the eighth asked is the contrary of the first given for the State. It, we think, propounds the law correctly, and tells the jury, reciting the main facts, if they believe these facts and if they believe that the agent of Schereschewsky poured out the cider to the prisoner, and put it on the counter, the usual place of delivering goods sold, and he went in and drank it, honestly believing it was his, then the crime of burglary was not proven.

The ninth instruction is in these words : "The jury is

further instructed that if they are satisfied from the evidence that the prisoner broke and entered the store or dwelling-house mentioned in the indictment at the time therein mentioned, and they further believe at the time he so broke and entered said house he was intoxicated or drunk, such intoxication or drunkenness is proper to be considered in determining the intention with which he broke and entered said house, and if they believe from the evidence that he was then so much intoxicated as to be unable to understand the criminality of his actions or forming a criminal intent, then the jury should find for that reason not guilty under either count of the indictment." This instruction was properly refused. Drunkenness is no excuse for crime; and it can only be considered by the jury in one instance, and that is to determine in a murder case whether the prisoner could have deliberated and premeditated and thus to see whether he was guilty of murder in the first or second degree. *State* v. *Robinson,* 20 W. Va. 713; *Hopt* v. *People,* 104 U. S. 631.

For the same reason the fourteenth instruction asked for the prisoner was properly refused. The tenth, eleventh, twelfth, and thirteenth instructions asked, being substantially the same as the eighth, which we have considered, were correct and should have been given in substance.

We have disposed of the instructions. We will not consider the evidence on the motion for a new trial, as the case will be remanded for a new trial. The judgment is reversed, the verdict of the jury set aside, and the case remanded for a new trial.

REVERSED. REMANDED.