# CHARLESTON

## STATE v. STOVER.

Submitted June 9, 1908.    Decided December 22, 1908.

1. HOMICIDE—*Instructions—Degree of Crime—Prima Facie.*

An instruction that if the accused unlawfully and intentionally hit the deceased in the head with a pistol and killed him, though the accused did not intend to kill, yet he is *prima facie* guilty of murder in the second degree, is not binding on the jury to find that degree of murder, and does not prevent them from finding voluntary manslaughter or self defence, and is not error. (p. 670.)

2. CRIMINAL LAW—*Trial—Taking Indictment to Jury Room.*

The fact that on a criminal trial the indictment, having written on it a former verdict of guilty, is taken by the jury to its room, no objection having been made to its doing so, is not ground for new trial. (p. 670.)

3. SAME—*Papers.*

What may be taken by the jury to its room? (p. 671.)

Appeal from Circuit Court, Raleigh County.

Lantie Stover was convicted of murder in the second degree, and brings error.

*Affirmed.*

M. F. MATHENY and G. W. WILLIAMS, for plaintiff in error.

WM. G. CONLEY, Attorney-General, A. A. LILLY, J. W. BALL, A. P. FARLEY, and A. M. BELCHER, for the State.

BRANNON, JUDGE:

Lantie Stover was indicted for the murder of John Lewis in Raleigh county and two trials by a jury resulted in a verdict of guilty of murder in the second degree. From the last sentence in the criminal court of Raleigh county Stover took a writ of error to the circuit court, and the latter court having affirmed the sentence, Stover comes here by a writ of error.

It is useless to detail evidence. As I have several times written it is not the office of an opinion in this Court, except in rare cases, to detail evidence, but to pass on legal

questions. In this case it is enough to say that Stover, a. constable, had arrested the son of John Lewis and while taking him past the house of Lewis a quarrel and altercation arose between Stover and Lewis and his wife, in which Stover struck John Lewis on the head two licks with a pistol, by one of the licks breaking the skull of Lewis, causing his brains to. ooze, from which wound Lewis died in a day or two. There is a considerable volume of evidence on both sides, and the decision of the case involves the question of self defence, or if not that, then whether the case was one of murder or voluntary manslaughter. That Stover killed Lewis is not a. question in the case. The most important question in the case comes up upon an instruction telling the jury that if they believe from the evidence that Stover ''unlawfully and intentionally hit John Lewis in the head with a pistol, although they may believe that Stover did not intend to kill the said John Lewis, yet the said Stover is *prima facie* guilty of murder in the second degree.'' It is urged that this instruction is bad as binding the jury to say that upon the facts put in it they were bound to find Stover guilty of second degree. If that were so, we should gravely doubt the instruction. The attorney general seeks to vindicate it on the oft repeated law that when a homicide is proved the presumption is that it is murder in the second degree. But the courts, when saying that, almost universally say that if the defendant would reduce the degree of homicide, or make it. self defence, he must show it or those defences must arise from the evidence of the state. This instruction does not do that. We do not think that the law cited by the attorney general for the proposition stated will answer the objection to this instruction. The question we have is, Does this instruction suit the case as presented? The voluminous evidence raises the question, as the defence urges, of self defence and voluntary manslaughter. Does this instruction leave the door open to the jury to consider those defences? If it does not, it is bad. If it does so, it is good. Upon mature consideration the court has concluded that the instruction is good. Note that the instruction does not say unqualifiedly that if the facts supposed in it exist, the prisoner was guilty of second degree murder, because it uses the words "*prima facie.*" Those are words of very common

use in the courts and in newspaper reports of judicial decisions. They import that the evidence produces, for the time being, a certain result; but that that result may be repelled. They import that there is a presumption of guilt arising from the facts supposed in the instruction; but they do not import that that result is conclusive, beyond any showing to the contrary. They import that the door was open to the jury to find either voluntary manslaughter or self defence. This must be so, else why those words? This must be so, else we are bound to say that a jury could not understand their meaning. We must attribute some intelligence to men selected for the important function of jury service. Again, must we not presume that the progress of the trial gave the jury an understanding of these words? Must we not understand that the court gave the jury information as to them, or that the argument of counsel did, and that the jury understood them, especially when we know that fifteen instructions for the defence were given, as shown by the court order, but which were not incorporated in the record? Certainly the able counsel for the prisoner did not let those features of defence pass without presenting them to the jury by instructions or by argument. If he did not, he waived them, which we do not suppose he did do.

Another instruction was that if the jury believed that Stover "intentionally hit John Lewis with a pistol and killed him, although they may believe that he did not intend to kill Lewis, yet the prisoner cannot rely upon accidental killing to excuse him." We do not see any error in this instruction. How could he rely on accidental killing, if he intentionally struck with a pistol? But this instruction does not seem to be relied on.

It is assigned as error that the court permitted the indictment to be taken by the jury to their room when considering of their verdict, the indictment having indorsed upon it a verdict of a former jury finding the prisoner guilty of murder in the second degree. It has been a subject of much discussion in courts as to what papers can be carried by the jury into their room when sent to it to deliberate upon their verdict. The old rule was that no paper, unless sealed, could be taken by the jury to their room. That absurd rule has been

long ago abolished. The modern rule is that all papers presented for the consideration of the jury, except depositions, may be taken out by the jury. It has often been said that instruction shall not be taken out by the jury. This has always seemed to me to be absurd. They are read to the jury in open court. They are often numerous and somewhat complicated. As they furnish the guide for the jury as to the law, why should they not be before the jury for refreshment of their memory and clear understanding? One reading may not be sufficient, generally will not be, and they should be before the jury to refresh their memory and to state exactly what the court instructed. Our statute states the modern rule that "Depositions or other papers read in evidence may, by leave of the court, be carried from the bar by the jury." Code, chapter 131, section 12. Judge Dent expresses the opinion that that section is applicable only to civil cases. Strictly that may be so, but I have some question about it. Depositions, by the general rule, cannot be carried out, and yet, it is difficult to see why they should not be. We find it laid down in 12 Cyc. 675, that, "Usually, either by statute or as a rule of practice, the pleading and all papers in evidence are delivered to the jury on their retirement." Instructions are generally carried out. Certainly the court may allow it. 17 Am. & Eng. Ency. L. 1244; *Mitchell's Case*, 89 Va. 826. That all papers in evidence, except in some places depositions, may be carried out is given as the rule generally prevalent in 12 Ency. Pl. & Prac. 591. 2 Thompson on Trials, section 2575, says that: "The modern practice is believed to be to send to the jury room all documents and papers, other than depositions, which have been received in evidence. In the absence of prohibitory legislation, it is certainly in the discretion of the judge to permit such papers to be taken out by the jury * * * * and ordinarily a verdict will not be set aside because it has been done, unless prejudice appears to have resulted from it." The Virginia case of Bowles, 103 Va. 816, holds that it is always proper to give the jury the indictment and instructions and other proper papers in the presence of the prisoner. I entertain no doubt that this should be done in felony cases in the presence of the prisoner. But the question in the present case is not as to what papers can be carried out by the jury, but

whether the endorsement on the indictment of a former verdict of guilty being in the jury room is a ground for a new trial. That endorsement was not given in evidence. Surely any juror would know that he ought not to consider a matter not in evidence. Surely any juror would know that he ought not to be governed by a former verdict. ` He would ask, Why a new trial if that verdict is to govern? It would be very technical and tend to the defeat of criminal justice to overthrow trials upon such slim ground. We find it laid down in 2 Thompson on Trials, section 3576, that "The mere fact the verdict in a former trial gets accidentally into the hands of the jury with the papers, has been held no ground for a new trial." In our case of *State* v. *Shores*, 31 W. Va. 491, an indictment for felony against three had endorsed on it a verdict of guilty as to one upon his separate trial. It was held that the fact that the indictment with the verdict on it was before the jury on the trial of one of the other defendants was no ground for a new trial. That virtually settles the question in this case. But who is to blame for the fact that the indictment went before the jury? There was no objection by the prisoner. We are to presume that he was present when the indictment was handed to the jury, and he should then have objected. As the Court said in the *Shores Case*, if the prisoner had moved the court not to let the jury have the indictment, but a copy, it would be a different question. That is, the prisoner must have objected. In that case the court refused to send for the indictment and take it from the jury pending their deliberation; but here the point was not raised except on a motion for a new trial. 17 Am. & Eng. Ency. L. 1245, says: "The record of a previous conviction should not be allowed to go to the jury; but an objection in this regard should be promptly made." Likewise 2 Thompson on Trials, section 2591. So in *Forbes' Case*, 90 Va. 550.

Seeing no error, we must affirm the judgment of the circuit and criminal courts.

*Affirmed.*