STATE *v.* ELZIE ERWIN

(No. 6846)

Submitted June 4, 1931.   Decided June 9, 1931.

*H. H. Darnall,* for plaintiff in error.

*Howard B. Lee,* Attorney General and *R. A. Blessing,* Assistant Attorney General for the State.

LIVELY, JUDGE:

The indictment charges Elzie Erwin and four others, including Herbert Holley and Arthur Holley, with feloniously and burglariously breaking into a garage with intent to commit larceny, and that they did steal, take and carry away therefrom twenty-two dressed turkeys and five dressed chickens of the total value of $103.00, all the property of T. S. Blake.

Defendant was tried separately and received a sentence of seven years in the penitentiary, and now prosecutes error, charging (1) the evidence is insufficient to sustain the verdict; (2) error in the admission of evidence; and (3) error in permitting the jury to take to its room, when the case was submitted to it for a verdict, the indictment on which there was notation by a former jury finding Arthur Holley (jointly

indicted with defendant) guilty of the charge therein, together with another notation thereon that Herbert Holley (also jointly indicted) had pleaded not guilty, but had withdrawn his plea, and had been sentenced to confinement for five years in the penitentiary; all over the objection of defendant made at the time the indictment was handed to the jury.

We will consider the points of error in the order named. First, does the evidence sustain the verdict? There is no controversy over the fact that some person or persons burglarized Blake's garage and stole therefrom twenty-two dressed turkeys and five dressed chickens on the night of December 23, 1927. Defendant's defense consists of an alibi. According to the evidence of James Cooper, he approached defendant about one week after Christmas in 1927, and accused him of taking his (Cooper's) fourteen-year-old boy with him at the time he took the turkeys from T. S. Blake's garage, whereupon defendant denied that he had taken his boy there and asserted that there were no "kids" along with them at the time; that there was no one with him except Arthur Holley and Herbert Holley when "we went up to get the turkeys" from "old man" Blake. John Cloxton, jointly indicted with defendant, but then serving a sentence in the penitentiary upon conviction for another offense, testified that he saw defendant the next day after the turkeys and chickens were stolen in a car with his sister, Nora Kirby, and another woman, on the streets of Huntington with a number of dressed turkeys which he was selling, and which defendant said he had gotten on Barker's Ridge at Tim Blake's; and Tennessee Holley, the wife of Arthur Holley (jointly indicted), testified that defendant told her about the middle of January, 1928, that he had given her husband eight dollars derived from the proceeds of the sale of Tim Blake's turkeys which they had got "out of the head of 7-mile." Charles Holley said he saw defendant, together with Arthur Holley and Herb Holley and Nora Kirby in an automobile on Eighth Avenue in Huntington on December 24, 1927, with a tub full of dressed turkeys and a number of other turkeys on the seat of the car and that they had offered him one dollar if he would help sell them.

Defendant denied the conversation related by Cooper and denied that he had told anyone he had broken into Blake's garage and stolen the turkeys; and denied that he had committed the offense charged. He admitted that he had bought four turkeys from Arthur Holley about the first of January, 1928, and had paid him eight dollars therefor, and after he had sold them to Bailey, a merchant, at a profit of five dollars, he had found that these .turkeys were stolen. He said that Holley gave him two chickens in the trade, ''just threw them in.'' The mother, a sister, and a cousin of defendant said he was sick with ''flu'' in the latter part of December, 1927, and up into January following, and was unable to leave the home of the mother; and Dr. Williams testified he had made three visits to see defendant who was suffering from ''flu'' and in bed from that malady, a short time before Christmas. He said the last visit he made was about three days before Christmas when defendant had the usual temperature of about two degrees accompanying ''flu,'' and he had ''dismissed the case'' at that time; and that defendant was then in a weak condition. Dr. Williams had made memoranda in writing of the date of the visit to defendant's sick bed, had mislaid them and could not find them at the trial. It will be observed that two witnesses for the State say they saw the defendant on the streets of Huntington on the 24th of December with many dressed turkeys for sale; and that other witnesses testified that defendant told them he got the turkeys at Tim Blake's. The alibi has put the defendant in bed at the time of the robbery and until up in January. The argument is that the evidence is not sufficient to sustain a verdict of burglariously stealing the poultry, that it would only sustain a verdict for receiving stolen goods. On this conflict of evidence, we cannot say the verdict is contrary thereto and is not sufficient to sustain the verdict. The jury saw the witnesses and their demeanor, and the weight and credibility accorded by it to their testimony will not be disturbed. The jury had the right to believe or disbelieve any of these witnesses. Citation to our numerous decisions to that effect would be wearisome.

The second point of error relates to the evidence of Dr.

Williams, who, on direct examination, had said he had kept memoranda of the date of his visits to his patients, and had memoranda of the date on which he had visited defendant but had lost them, and was speaking from memory as to the time of his professional visits. On cross-examination, he was asked why he particularly remembered the date of his professional visits to defendant, which he had said was a short time before Christmas in 1927. He answered as follows: "Well, because I was here once before when the fellow was tried before, when I was out there to his home. They had moved up on Buffington Street, 306 I think." He was then asked: "You mean, you were here when he was tried at a former term of court, Mr. Erwin?" A. "Yes, and sentenced, I guess so. I heard so." Q. "You understood Elzie Erwin was tried at a former term and sentenced?" A. "I was here; I was a witness." Q. "For stealing these turkeys?" A. "No, no, I don't know what he stole that time; not these.". Q. "How long ago has that been?" At this point defendant's counsel objected and moved to strike out the questions and answers and the court sustained the motion "as to any reference to what he stole." We perceive no attempt of the prosecuting attorney to attack the character of the defendant as a law abiding citizen. The witness unexpectedly and voluntarily stated the fact in his remembrance (former trial) by which he fixed the time of his professional visits to defendant as before Christmas, 1927. The prosecuting attorney evidently thought the witness was under the impression that a second trial on the "turkey indictment" was then in progress, and was attempting to show by his questioning that the witness was mistaken, thus weakening his evidence to establish the alibi. Then the Doctor made it clear that he was talking of some other case and trial. The court refused to strike out the questions and answers, but did sustain the motion to the extent above set out. It would have been better if the court had, upon request, instructed the jury not to consider the fact of a former arraignment of defendant in arriving at their verdict. An indictment is no evidence whatever of guilt. But had such an instruction been given it is difficult to see how the fact of the former arraignment could have been

erased from the minds of the jurors, a fact unexpectedly brought into the trial by a witness for defendant. But however brought into the trial, the jury should have been instructed not to consider that fact in arriving at their verdict. But errors of this character, not brought about by design, are not usually sufficient to, cause reversal when the court has instructed the jury to disregard. *Ambrose* v. *Young*, 100 W. Va. 452; *Smith* v. *Gould*, handed down this term.

The third assignment of error is a serious one. When the case was ready to be submitted to the jury for its verdict, counsel for defendant presented to the court a duly attested copy of the indictment and moved the court that the same be given to the jury to take to their room in order that the jury might not see the notation on the back of the indictment on which the trial was had. That motion was overruled and the indictment with the notation of the former conviction of a co-indictee and a confession of another co-indictee made on the back thereof went to the jury and on which indictment they found the defendant guilty as charged. Out of that notation the jury ascertained a fact which would have been improper and highly prejudicial if that fact had been admitted in evidence. What significance would the jury give to the fact that a co-indictee, Arthur Holley, had been convicted by a former jury, and that a co-indictee, Herbert Holley, had confessed and received his sentence of five years? It would have a tendency to lead them to believe that he was as guilty as his co-indictees. In our practical experience we know what effect such fact has upon a jury. If the record of the former conviction of Arthur Holley and the record of the plea of guilty of Herbert Holley had been offered in evidence, it cannot be questioned they should have been rejected. To admit such records would have been error; and we can see no difference in getting the fact to the jury in another form. We have in this jurisdiction two decisions where the indictments having notations thereon of former convictions went to the jury, in both cases, without objection at the time they went into the jury room. These cases are *State* v. *Shores*, 31 W. Va. 491, and *State* v. *Stover*, 64 W. Va. 668. In the *Shores* case the indictment had a notation on it of a former

conviction of a co-indictee. After the indictment had gone to the jury room, the prisoner, by counsel, moved the court to send for the indictment and take it from the jury and the court denied that motion. Upon writ of error to this court, it was decided that the court had not committed error in refusing to withdraw the indictment from the jury room. The court in that case said: "If the defendant had moved the court not to let the jury have the indictment but a copy, it would raise another question that we will not here decide." It was further said that the prisoner might have also asked the court to have the jury instructed not to regard the endorsement on the indictment of the finding against Hall, his co-indictee. It was pointed out that the jury had already seen the endorsement before any motion was made with reference thereto. The motion came too late. In the *Stover* case there had been a former trial of Stover and the jury had found him guilty of murder in the second degree which notation was on the indictment which went into the hands of the second jury, which found him also guilty of the same offense. No objections was made to giving the indictment to the jury with the notation thereon. But it was made as a ground for setting aside the verdict. In the opinion, JUDGE BRANNON was careful to point out that the prisoner had made no objection to sending the indictment with the notation into the jury room, and the court put in the syllabus that it was no ground for a new trial as such had been done without objection by the prisoner. And in *Forbes* v. *Commonwealth,* 90 Va. 550, it was held that the objection to sending to the jury the indictment endorsed with a verdict of guilty found at the first trial came too late after the verdict had been rendered and could not be heard on a motion in arrest of judgment. The substance of that decision is that objection to the sending of the notated indictment to the jury room should be seasonably made, that is, before the indictment reaches the jury room. What effect the notation of former conviction and confession of his co-indictees had upon the jury it is impossible to say. It is enough to say that the information in this form was improper, and having reached the jury over the objection of defendant, we must presume that it was prejudicial.

On this ground, the verdict must be set aside, the judgment reversed and a new trial awarded.

*Judgment reversed; verdict aside; new trial awarded.*