STATE OF WEST VIRGINIA

*v.*

CHARLES EDWARD WEST

(No. 12754)

Submitted May 7, 1969.         Decided July 15, 1969.

*Sprouse, McIntyre & Louderback, James B. McIntyre,* for plaintiff in error.

*Chauncey H. Browning, Jr.,* Attorney General, *Leo Catsonis,* Assistant Attorney General, for defendant in error.

BERRY, JUDGE:

The defendant, Charles Edward West, was indicted jointly with Stephen Arthur Balazs, John Larry Bronaugh, Dianna Carroll West, Marshall Herbert West, Jr. and Patricia Ann West for the murder of Michael Windom at the January, 1967 term of the Intermediate Court of Kanawha County, West Virginia, and was found guilty of voluntary manslaughter by the petit jury on June 9, 1967. The trial court refused to set aside the verdict and grant defendant a new trial, after which a petition for a writ of error and supersedeas was denied by the Circuit Court of Kanawha County, West Virginia, on January 22, 1968. Upon application to this Court a writ of error and supersedeas were granted to the judgment of the Circuit Court on January 22, 1968, which was submitted for decision upon arguments and briefs at the April Special 1969 Docket.

John Bronaugh, a joint defendant, had previously been tried in the Intermediate Court and convicted of second degree murder. This verdict by the petit jury was written on the face of the indictment and signed by the foreman of the jury. A motion was made on behalf of the defendant, West, at the beginning of the trial in the case at bar to either dismiss the indictment or continue the case because of the above writing on the indictment on the ground that the notation pertaining to the conviction of Bronaugh contained on the face of the indictment amounted to a change or amendment of said indictment. The trial court overruled the motion and directed the clerk to place white heavy bond paper over the face of the indictment so the verdict in the prior trial would be obliterated.

This case arose out of an altercation between two groups of young people which occurred after the Charleston High School-Stonewall Jackson football game on November 11, 1966 in which Michael Windom was stabbed to death. · One of the groups will be designated as the "Windom" group, and the other as the "West" group. It appears that neither the Windom nor the West group knew each other before the altercation. The two groups had been sitting in opposite stands at the football game and did not see each other until after the game. The evidence introduced by the state and by the defendant is conflicting with regard to what transpired in the events leading up to and including the death of Michael Windom.

On the evening of the game the deceased, Michael Windom, age 19, accompanied by his brother Larry, age 18, and another boy, Anthony Clendenin, age 17, left the Windom home on the west side of Charleston to attend the game. Inasmuch as the testimony as to ages in the record was given six months after the death of Michael Windom, the occurrence of a birthday could have altered the ages by a year. They stopped on Camden Drive at Connie Norman's house where they were to meet two girls, Sarah Adkins and Connie Norman, and then proceeded to the vicinity of Laidley Field and parked their car on Thompson Street off Jackson Street. At half-time of the game they were joined by Gary Windom, age 17, another brother of the deceased, who had been working at the Big Star Market during the first half of the game and who brought with him a box cutter which he had been using in connection with his work. The West group who lived on the east side of Charleston had also gone to the game in an automobile driven by Dianna West who parked her car on Maxwell Street facing Jackson Street in front of a house located at 507 Maxwell Street.

At the game Herbert Lee Wittard, age 16, apparently joined the West group but did not take part in the altercation following the game and appears to be a disinterested witness. He testified that John L. Bronaugh ex-

hibited a switch-blade knife at the game, that the defendant Charles West exhibited a blackjack, Marshall West exhibited after the game a steel roller bearing about one and one-half by three quarters of an inch in size and that the defendant Charles West made the statement that there was going to be a fight after the game.

It appears that both the West and Windom groups left a short time before the end of the game. Dianna West had left earlier to start the motor of the car before the rest of the group got to it. Both groups left the stadium at the Elizabeth Street entrance with the West group in front of the Windom group. According to the evidence of the state the first communication between the groups occurred as they were crossing the railway tracks when the West group began shouting at the Windom group and one of the West group told the Windom group to "go to hell." The deceased Michael Windom suggested that they wait until the West group left. The Windom group stopped and waited until the West group proceeded into a passageway between the railway tracks and Maxwell Street, which was out of sight of the Windom group.

When the Windom group entered the passageway they found the West group lined up against the fence near an adjoining house. They attempted to go past but the West group surrounded them. The defendant grabbed one of the Windom boys and attempted to hit Michael Windom with a blackjack but was prevented from doing so by Gary Windom. The defendant and Gary Windom then started fighting each other after which about three of the West group had the deceased Michael Windom on the ground when two or three men who were passing by managed to break up the fight. The testimony of the witnesses who broke up the fight is not very satisfactory as to who the aggressors were as they did not know the parties, having never seen them before this altercation and being indefinite as to the actions of the parties. However, they did testify that after they had intervened

Gary Windom attempted to assault one of them but was stopped by one of the others who broke up the fight.

The West group then went out the passageway and into Maxwell Street and proceeded to their car. After the West group left, the Windom group proceeded onto Maxwell Street in order to get to their car. The evidence of the state is that when the Windom group attempted to pass the West car one of the West girls cursed them and another one jumped out of the car and assaulted Gary and Michael Windom. The deceased in this altercation was forced to his knees in the yard in front of the house at 507 Maxwell Street and was held by Pattie West while Dianna West hit him in the face with a shoe.

The four boys, Charles West, Marshall West, Stephen Balazs and John Bronaugh who had gotten into the rear seat of the West car then got out of the car. The defendant, while attempting to use his blackjack on Gary Windom, was grabbed by the deceased Michael Windom and he apparently dropped his blackjack. In the general fight which followed between the two groups in the yard the state's evidence places the defendant Charles West in the yard, and Dianna West, a witness for the defendant, testified that she saw the deceased Michael Windom push or shove the defendant away from him. During this fight the Bronaugh boy stabbed the deceased twice with a switchblade knife, once in the back and once in the groin. The deceased was left lying on the ground where he had fallen, vomiting and unconscious, while the West group departed in their car. One of the girls covered the license plate on the West car with her coat and the other stated, when asked to help the deceased, that it was none of their concern.

The West group, after stopping for another one of the West girls, proceeded to the Charleston Memorial Hospital where their minor cuts and bruises were treated. The police were called and had Michael Windom removed to the hospital where he was pronounced dead on arrival.

He had lacerations, abrasions and contusions on his face and other parts of the body, a tooth knocked out and a stab wound several inches in his back and another several inches in his groin, the latter wounds causing his death by hemorrhage and loss of blood.

The switchblade knife was found in the glove compartment of the West car and the blackjack under the rear of the front seat of the West car. The paper box cutter was found at the scene of the fight.

The evidence of the defendant differs from that of the state in the main as to who started the fights. The defendant's evidence is to the effect that they were waiting in the passageway for Patricia West to catch up with them; that while the West group was in the passageway the Windom group threw a beer can and hit Charles West and two or three boys pinned him against a fence and that Gary or some of the Windom group came up to the Balazs boy and bit him after pinning him up against the fence. Then, in the second altercation on Maxwell Street one of the Windom group grabbed Patricia West by the hair and pulled her up into the yard and was attempting to hit her when Dianna West got out of the car to rescue her, and Dianna West's coat was cut by Michael Windom using the paper box cutter; that when the defendant got out of the car with the blackjack he was assaulted by the Windom group; that Bronaugh was attempting to rescue the West girls and was cut on the cheek by the deceased with the box cutter. The defendant denied seeing the switchblade knife used by Bronaugh but Marshall West testified that after the fight Bronaugh gave the knife to him and he placed it in the glove compartment of the car and defendant's blackjack was placed under the back of the front seat.

Although there were many assignments of error in the courts below they were abandoned or consolidated into four assignments in this Court as follows: (1) Refusal of trial court to dismiss the indictment on which the verdict

in the former trial had been written and the ordering instead by the trial court that a piece of paper be placed over the verdict; (2) the refusal to direct a verdict at the conclusion of the state's evidence and at the conclusion of all evidence; (3) prejudicial inconsistency between state's instruction number 2 and defendant's instruction number 25 regarding culpability of the defendant; and, (4) that the verdict was incompatible with the evidence.

There is no merit to the first assignment of error with regard to the verdict of guilty contained on the face of the indictment of a former trial. The case of *State* v. *Erwin*, 110 W. Va. 615, 159 S. E. 66, cited by the defendant in support of this assignment does not support this contention. In the first place, the defendant in the *Erwin* case moved that a duly attested copy of the indictment be substituted for the original indictment without having on said copy the verdict of guilty of a joint defendant in a prior trial contained thereon, as well as without the confession of guilty of another joint defendant which was on the face of the original indictment. This motion was overruled by the court and the jury allowed to take the original indictment with the above notations visible to the jury room and there was no paper covering such notations placed on the indictment as was done in the case at bar. In the *Erwin* case the Supreme Court held that overruling the motion was reversible error. No objection like that of the *Erwin* case was made by the defendant to the taking of the indictment to the jury room in this present case. Then, too, a white heavy bond paper was placed over the verdict of the jury on the face of the indictment at the direction of the court, and there is no evidence in the record that the jury saw the verdict of the conviction of the joint defendant in the prior trial. Where a former verdict of guilty is written on the face of an indictment and no objection is made to the jury taking said indictment into the jury room, such action does not constitute reason for reversal and is not

ground for a new trial. *State* v. *Shores,* 31 W. Va. 491, 7 S. E. 413; *State* v. *Stover,* 64 W. Va. 668, 63 S. E. 315. This question is adequately answered in the second point of the syllabus in the case of *State* v. *Stover, supra,* in the following language: "The fact that on a criminal trial the indictment, having written on it a former verdict of guilty, is taken by the jury to its room, no objection having been made to its doing so, is not ground for a new trial." The case of *Corbin* v. *State,* 212 Ga. 231, 91 S. E.2d 764, is quite similar to the case presented here, as it was held in that case that in any event where a former verdict written on an indictment is covered at the direction of the court by cardboard stapled over it, there is no error in allowing the jury to take the indictment to the jury room.

The next assignment of error of the refusal to direct a verdict at the conclusion of the state's evidence, and at the conclusion of all the evidence, is also without merit.

The evidence in this case is highly conflicting and the weight of such evidence, as well as the credibility of the witnesses, is a matter for jury determination and not for the court. 23A C. J. S., Criminal Law, §1145 (3) a & b; *State* v. *Winans,* 100 W. Va. 418, 130 S. E. 607; *State* v. *Etchell,* 147 W. Va. 338, 127 S. E.2d 609; *State* v. *Bailey,* 151 W. Va. 796, 155 S. E.2d 850.

The state's evidence, which is clearly competent evidence, was that the defendant and his brother, Marshall, and Bronaugh, came to the game equipped for a fight; that Bronaugh exhibited a switchblade knife to the defendant and others, that the defendant exhibited a blackjack he had concealed on his person and Marshall West exhibited a steel ball bearing. The defendant made a statement that there was going to be a fight or he was expecting a fight; that the West group hurled insults to the Windom group after the game, lay in wait in the passageway where the first fight occurred; that the defendant attempted to hit one of the Windom group with

a blackjack; that the West group precipitated the second fight where the West car was parked on Maxwell Street and that the defendant holding a blackjack was in bodily contact with the deceased Michael Windom before he was fatally stabbed by John Bronaugh. The defendant's evidence was inconsistent and conflicting with that of the state to the effect that one of the Windom group pulled Patricia West out of the car by her hair. The testimony in behalf of the defendant was inconsistent with regard to the position of Patricia West, some saying that she was in the car, some that she was out of the car, and some that she was halfway in the car and halfway out. There was a conflict with regard to the blackjack carried by the defendant. He testified that he was pinned against the car and dropped the blackjack which was refuted by other witnesses who said that defendant was in the yard with the blackjack attempting to strike one of the Windoms. Some of the witnesses stated they never saw the defendant get out of the West car and that he did not participate in the fight, but Dianna West had testified in another trial that the defendant was in the yard and she saw the deceased Michael Windom push the defendant and confirmed such statement in this trial. The state of this evidence makes it a clear case for jury determination, and for the court to direct a verdict would be an invasion of the province of the jury. This matter is set out in the second point of the syllabus of the case of *State* v. *Bailey, supra,* wherein it is held: "The jury is the trier of the facts and in performing that duty it is the sole judge as to the weight of the evidence and the credibility of the witnesses." Upon motion to direct a verdict for the defendant, the evidence is to be viewed in light most favorable to prosecution. It is not necessary in appraising its sufficiency that the trial court or reviewing court be convinced beyond a reasonable doubt of the guilt of the defendant; the question is whether there is substantial evidence upon which a jury might justifiably find the defendant

guilty beyond a reasonable doubt. *White* v. *U. S.*, 279 F. 2d 740, cert. den. 364 U. S. 850, 81 S. Ct. 96, 5 L. Ed. 2d 74; C. J. S. 23A, Criminal Law, §1145 (3) (a); *State* v. *Smith,* 138 S. E.2d 705, 245 S. C. 59. See *State* v. *Spradley,* 140 W. Va. 314, 84 S. E.2d 156. In connection with this matter, this Court stated in point one of the syllabus of the case of *State* v. *Winans, supra,* that: "If a new trial depends upon the weight of testimony or inferences from it, the jury are exclusively and almost uncontrollably the judges."

The third assignment of error, as we have grouped them, contending that there was an inconsistency between state's instruction number 2 and the defendant's instruction number 25 with regard to the culpability of the defendant was not specifically assigned as error in the court below and there was no disposition made thereof. Notwithstanding this, we are of the opinion there was no prejudicial error in connection with the giving of these instructions. Instruction number 2 offered by the state and given by the trial court is a proper instruction for a principal in the second degree who is present aiding and abetting in the commission of a crime. This instruction told the jury that it was not necessary in order to to make one a principal in the second degree that he actually participate in the commission of the crime, but that the test is whether he was encouraging, inciting or in some manner offering aid or counsel to the crime, and that a principal in the second degree need not necessarily have intended the particular crime committed by the principal; that a principal in the second degree is liable for any criminal act which, in the ordinary course of things, was the natural or probable consequence of the unlawful act that the principal in the second degree was present, aiding and abetting, in committing, although such consequence may not have been intended by him and that even though the evidence shows that the defendant did not with his own hands inflict the mortal

wound but that such wound was inflicted by the principal, if the jury believe from the evidence beyond a reasonable doubt that the defendant was present acting as an aider and abettor and principal in the second degree as previously defined, then they may return a verdict of guilty. The defendant's objection to the instruction appears to be that the instruction states that one can be a principal in the second degree without participating in the commission of the offense. This objection is not well taken, because all that it is necessary for a principal in the second degree to be doing is to be present aiding and abetting in the commission of the crime. He does not have to commit the crime itself and the instruction so states.

It is also the contention of the defendant that this instruction is inconsistent with instruction 25 offered by the defendant and given by the court. The pertinent part of instruction 25 reads as follows: "You are further instructed that you may not find Charles West guilty of being a principal in the second degree to the crime of voluntary manslaughter unless you find, from the evidence, beyond all reasonable doubt that he intentionally aided and abetted in causing the death of Michael Windom." All that is necessary to make one a principal in the second degree is for one to be present aiding and abetting in the commission of the crime. The aiding and abetting in itself must be intentional or there would be no aiding or abetting. Therefore, the word *intentionally* is superfluous, and, if anything, the instruction was favorable to the defendant and is not in connection with the meaning of the words "aiding and abetting" inconsistent with instruction 2 offered by the state. *State* v. *May,* 62 W. Va. 129, 133, 57 S. E. 366; *State* v. *Stafford,* 89 W. Va. 301, 109 S. E. 326.

The last assignment of error to the effect that the verdict is incompatible with the evidence is also not well taken.

The general rule is that in an indictment for murder a principal in the second degree may be convicted of the lesser offense of voluntary manslaughter. 95 A. L. R. 2d, page 185; *State* v. *Prater,* 52 W. Va. 132, 43 S. E. 230; *Hayes* v. *State,* 112 Wisc. 304, 87 N. W. 1076; *People* v. *Barrett,* 261 Ill. 232, 103 N. E. 969; *Garcia* v. *State,* (Fla.) 204 So. 2d 340. The only authority to support this assignment of error is the dissenting opinion in the case of *Moore* v. *Lowe,* 116 W. Va. 165, 180 S. E. 1, cert. den. 296 U. S. 574, 56 S. Ct. 130, 89 L. Ed. 406. The dissenting opinion written by Judge Kenna was to the effect that the defendant having been indicted as an accessory before the fact to murder could not be convicted of voluntary manslaughter under such indictment. The *Moore* case holds that one indicted as an accessory before the fact to murder can be convicted of voluntary manslaughter but this has been disapproved by this Court in the case of *State ex rel. Muldrew* v. *Boles,* 151 W. Va. 1033, 159 S. E.2d 36. This has no bearing on the case at bar. The defendant in the instant case was jointly indicted for murder and the jury found him guilty of the lesser degree of voluntary manslaughter as aiding and abetting in such offense as principal in the second degree. Even though not the actor, he is subject to the same range of verdicts.

For the reasons enunciated herein, the judgments of the Circuit Court of Kanawha County and the Intermediate Court of Kanawha County are affirmed.

*Affirmed.*