CHARLES O. SHOW

*v.*

MOUNT VERNON FARM DAIRY PRODUCTS, *Inc.*

(No. 9775)

Submitted February 5, 1946. Decided March 12, 1946.

*Lilly & Lilly, A. A. Lilly, R. G. Lilly* and *M. E. Boiarsky,* for plaintiff in error.

*B. J. Pettigrew, Wilson Anderson, Sam D. Lopinsky* and *Charles Anderson,* for defendant in error.

RILEY, JUDGE:

Charles O. Show instituted this action at law in the Circuit Court of Kanawha County against Mount Vernon Farm Dairy Products, Inc., a corporation, to recover damages for alleged malicious prosecution. A trial was had in the circuit court at the May, 1941, term, resulting in a verdict and judgment for plaintiff in the amount of ten thousand dollars. Upon writ of error to this Court the judgment of the circuit court was reversed, the verdict set aside, and a new trial awarded. *Show* v. *Mount Vernon Farm Dairy Products, Inc.,* 125 W. Va. 116, 23 S. E. 2d 68. A second trial, had at the January, 1943, term of the circuit court resulted in a hung jury, and again there was a hung jury on the third trial of the case, had at the September, 1943, term of the circuit court. The instant writ of error is prosecuted to a judgment of the circuit court in plaintiff's favor in the amount of nine thousand four hundred dollars, based upon a jury verdict rendered in the fourth trial of the case at the September, 1944, term of the circuit court.

Defendant corporation was engaged in the business of selling and distributing milk and milk products, and operated a number of routes in and about the City of Charleston. On or before March 24, 1938, plaintiff was employed by defendant as its route manager, and had general charge of defendant's employees who operated defendant's milk routes, among whom was one Clark Deaver. On March 24, 1938, for reasons which apparently have no connection with this action, plaintiff was discharged and on the following day Clark Deaver voluntarily terminated his employment with defendant. Thereafter Show and Deaver were jointly engaged in the milk business in Charleston. A routine audit was made of defendant's books, which created a suspicion that there was a shortage in its accounts. A further investigation led to the belief on defendant's part that its employee, Deaver, had failed to account for moneys collected on his route, whereupon Deaver was called to the office of defendant's general manager, E. E. Bowyer, where Bowyer in the presence of another employee, Raymond Stewart, advised Deaver that his account was short. At first the latter denied there was any shortage, but later during the conversation he admitted that he was short in his account to the extent of two hundred fifty dollars.

Deaver was not present at the instant trial, but according to the transcript of his testimony given at the third trial, and read in evidence at the instant trial over defendant's objection, at the conference which witness had with Bowyer, at which Stewart, one of defendant's employees was present, the former asked Deaver "Why take all the blame?" but neither Bowyer nor Stewart told Deaver to implicate Show. However, on direct examination Deaver testified that Bowyer asked witness "to make an affidavit * * *. To the effect that Charlie Show was implicated in the taking of this money". Both Bowyer and Stewart deny this. Bowyer and Deaver then went to the office of a Charleston lawyer, where Deaver made an affidavit which implicated Show

in the embezzlement resulting in the alleged shortage. This affidavit contains statements to the effect that plaintiff had instructed the affiant how the shortages could be concealed, and stated that the peculations covered a period of eight months to one year, and that about three-fourths of the money withheld was paid to Show. This affidavit was introduced in evidence over defendant's objection. Deaver's testimony that he made the affidavit because he was promised immunity, is denied by Bowyer, Stewart and the Charleston attorney who prepared the affidavit. Staige Davis, the assistant prosecuting attorney who presented the indictment to the grand jury, and two members of the grand jury, testified that nothing was said in the grand jury room to the effect that Deaver was to be immune from indictment and prosecution. Deaver was indicted later, and pleaded guilty.

Following the making of this affidavit, defendant caused a complete audit of its books to be made, which disclosed that the actual shortage on Deaver's route was $1,108.40. The audit also developed shortages in other routes operated by defendant's employees, Eads and Kidd. Subsequent to the completion of this audit in August, 1938, the full amount of the shortage attributed to Deaver was collected from the surety company which had bonded both Show and Deaver. A representative of the surety company discussed the matter with the Assistant Prosecuting Attorney of Kanawha County, who got in touch with defendant's auditor and Bowyer, and as a result of that discussion the Deaver affidavit and other papers were turned over to the prosecuting attorney's office. At the April, 1939, term of the Intermediate Court of Kanawha County the matter was presented to the grand jury, which returned a joint indictment against Show, Eads and Kidd, separate indictments against Eads and plaintiff, and a "not a true bill" as to the charges against Deaver. Bowyer and defendant's auditor both appeared before the grand jury in answer to summons and testified. The cases were then placed

upon the docket of the Intermediate Court. Plaintiff employed counsel. Terms of the Intermediate Court were held in June and September, 1939, and January, 1940, at each of which plaintiff appeared, but no action was taken on the indictments. All of the indictments were dismissed at the April, 1940, term, upon motion of the prosecuting attorney. Defendant evidently took no part in these dismissals. Early in 1940 Deaver repudiated his affidavit, and testified for plaintiff at the first three trials.

Plaintiff's theory on the instant trial, as on the former trial which came here on writ of error, is that Bowyer as defendant's representative, acting within the scope of his employment, fraudulently induced Deaver to make a false affidavit, implicating plaintiff with Deaver, and that the affidavit was used as a basis for the indictment against plaintiff.

At the instant trial the testimony given by Clark Deaver on the third trial of this action was read to the jury. At the time of this trial Deaver was employed in the City of Philadelphia, but the case was set for trial at plaintiff's instance, and six days before the trial date, plaintiff's counsel wired to Deaver, requesting that he come to Charleston to appear as a witness for plaintiff, as he had done on the former trials, and offering to pay his expenses. Two days before the trial Deaver replied, stating that he could not come to Charleston on "account working conditions". Defendant objected to the reading of Deaver's testimony, but the trial court overruled the objection with the observation that if the transcript had not been made, he would have required that plaintiff take Deaver's deposition.

The trial court admitted a carbon copy of a letter dated March 17, 1939, which plaintiff says he addressed to H. E. Shadle, the president of defendant company, which letter reads as follows:

"March 17, 1939

"Mr. H. E. Shadle,
Charleston, W. Va.

"Dear Mr. Shadle:

"In making application for several positions in and around Charleston I have naturally given Mt. Vernon Dairy Co. as a reference, you having been my last employer.

"For some reason or reasons unknown to me, your present manager is not giving the same reference report verbally as on paper and is trying to cast a reflection upon my character.

"I gave to you, Mr. Shadle, seven years of honest, conscientious and dependable services and I feel I contributed a great deal towards the building of your business. However, if you and your company have anything against me that is detrimental to my character or a handicap in securing another position I would like to know just what it is all about.

"I have heard several rumors that there is a discrepancy at Mt. Vernon Dairy Co. although I have never been notified in any way and am at a loss to understand just what it is or could be.

"After all, I have a family which depends upon me for support and it is very unfair as well as unkind to me to be subjected to the matter of having unfavorable references given to inquiries concerning my employment with your company, making it appear that there was something wrong. If there is any question of doubt as to my stewardship while I worked for you I feel that I should be advised concerning it and be given a chance to defend my rights before any adverse reports are to be made to prospective employers.

"No man who ever left the services of the Mt. Vernon Dairy Co. while I was in your employ can say that I was ever instrumental in keeping him from acquiring another position, and I do not feel that I deserve to be treated in this manner or endure this hard feeling toward me.

"I will appreciate it very much if you will advise me just what is wrong and allow me to secure another job as soon as possible. As man to man and in the spirit of right, I am kindly asking you for the chance to support my family and take care of them as they deserve to be treated.

"Awaiting your reply, I beg to remain,

"Very truly,

"Enc. — Self-addressed stamped envelope enclosed for your convenience. Thanks."

Defendant's counsel specifically objected to the introduction of all parts of this letter, except the first and last paragraphs thereof, on the ground that the letter contains self-serving statements.

After the jury verdict in plaintiff's favor in the first trial, defendant filed a number of affidavits in support of its motion that the verdict be set aside on the ground of after-discovered evidence. Among these was the affidavit of Darrell Pitchford. Pitchford's affidavit in its concluding part refers to the fact that Show had obtained a verdict of ten thousand dollars against defendant in the first trial. On the third trial, over defendant's objection, the affidavit was introduced in evidence and read to the jury, and Pitchford was cross-examined on that part of the affidavit relating to the result of the first trial. On the fourth trial Pitchford, then being in the armed forces, that part of the affidavit showing the verdict of the jury on the first trial and the cross-examination of the witness on that part of the affidavit had at the third trial, were read to the jury by agreement of counsel, subject to defendant's objections at that trial. In chambers, defendant's counsel specifically objected to the affidavit and the cross-examination thereon. The court, however, permitted both the affidavit and cross-examination to be read to the jury, and instructed the jury that the affidavit should be considered in so far as it bears upon the credibility of Pitchford, and told the jury that they "are not concerned at all * * * with what took place

at the former trial, the result of it, the verdict, in whose favor it was rendered or the amount."

The record discloses that both defendant and Shadle, its president, gave to plaintiff letters of recommendation, which he used in his efforts to obtain employment. Plaintiff testified that he made application to various prospective employers in the City of Charleston, and that he was refused employment except in the case of Continental Baking Company, where he was employed for one day, and according to his testimony was told that he need not come to work the following day because of his record with defendant company. This statement is denied by the manager of the baking company.

Seven assignments of error are urged upon this writ of error as follows: (1) That the court erred in permitting the plaintiff to read the testimony of Clark Deaver given at the former trial; (2) in admitting in evidence a copy of the letter dated March 17, 1939, written by plaintiff to H. E. Shadle, president of defendant corporation; (3) in admitting that part of the affidavit and cross-examination of Darrell Pitchford which showed the result of the first trial; (4) in refusing to give defendant's instruction No. 18; (5) in refusing to give defendant's instruction No. 20; (6) in refusing to set aside the verdict on the ground that it is excessive; and (7) in refusing to set aside the verdict on the ground that it is without sufficient evidence to support it, and is contrary to the law and the evidence.

For convenience these assignments will be discussed *seriatim.*

The first assignment of error, in our opinion, is without substantial merit. In this regard, we think we should be governed by the decision of this Court in *Browning* v. *Hoffman,* 90 W. Va. 568, 111 S. E. 492. In that case the testimony of plaintiff's aunt, who had testified at a former trial, was admitted in the second trial over objection, she having left the State and gone to another so far distant as to render it very inconvenient to procure

her attendance and rather difficult to obtain her deposition. In point 15 of the syllabus in the *Browning* case, this Court held: "In a second trial of a civil case, the preserved testimony of a witness in the first trial is admissible on proof that he has since left the state and his attendance cannot conveniently be procured." But counsel for defendant rely upon the decision in the case of *Hubbard* v. *Schofield*, 97 W. Va. 453, 125 S. E. 221. In that case this Court affirmed the action of the trial court in overruling the motion of plaintiff's counsel therein that the testimony of his client given on a former trial be read on the ground that his client was outside of the State and financially unable to travel to the place of the trial. Counsel for defendant now say that there should be no distinction between (1) not permitting the former testimony of a plaintiff to be read, where his testimony constitutes the basis of his claim, as in the *Hubbard* case, and (2) not permitting the former testimony of a witness to be read where such testimony constitutes the basis of plaintiff's claim, as in the instant case. The distinction, however, between the two cases lies in the fact that a party litigant has control of his own person and can return to the jurisdiction of the court, or, in the first instance, he could have remained in the jurisdiction during the pendency of his case. Without any suggestion from plaintiff, or his counsel, Deaver removed himself from this State, and thereafter put himself beyond the control of the trial court. If he had been summoned and the process directed to the foreign jurisdiction, it would be of no avail, and if his deposition had been taken, there would be no advantage to either party above that which would be obtained as was done in this case by the reading of his testimony. The witness was both examined and cross-examined, as shown by the transcript read in evidence at the instant trial. Deaver's employment outside the State, taking his telegram as true, rendered it inconvenient for him to come to Charleston to attend the instant trial as a witness, and whether it was convenient or not, his attend-

ance was beyond plaintiff's control. This case, we think, comes clearly within the rule of the *Browning* case, which is in conformity with respectable authority. 5 Wigmore on Evidence, 3rd Ed., Section 1404, page 149.

The introduction, however, of the Show-Shadle letter of March 17, 1939, was reversible error. As can readily be seen, the letter supports plaintiff's theory of the case and contains many self-serving statements and declarations which would tend to prejudice the jury in plaintiff's favor. As suggested in 2 Jones Commentaries on Evidence, 2d Ed. 895, quoted with approval by this Court in *Scott* v. *N. & W. Ry. Co.*, 104 W. Va. 461, 463, 140 S. E. 329: "It would be obviously unsafe if parties to litigation were without restriction allowed to support their claims by proving their own statements made out of court." If plaintiff had been examined by his counsel as to the self-serving matters contained in this letter, his testimony in several regards would have been inadmissible. If a party litigant could by letter addressed to the opposing party bolster his own case, and such should become the prevailing practice, the records in law actions would teem with letters of parties litigant written to the opposing party, which letters would contain self-serving statements designed to prejudice the jury in the writer's favor. We think, therefore, that the court erred in permitting the letter to be read to the jury, and that its action constituted prejudicial error.

The court erred, as assigned in defendant's third assignment of error, in admitting that part of the affidavit of Darrell Pitchford, showing the result of the first trial and the cross-examination of affiant in relation thereto had at the third trial. In *State* v. *Erwin*, 110 W. Va. 615, 619, 620, 159 S. E. 66, this Court held that it was erroneous to give to the jury a notation of the former conviction and confession of defendant's co-indictees, but that was a criminal case in which the actions of the defendant therein were so interwoven with the conviction and confession of defendant's co-indictees that this

court properly presumed that the error was prejudicial. Here, however, the court promptly instructed the jury to disregard the happenings at the former trial, the result of it, the verdict, in whose favor it was rendered, and the amount. This served to cure the error.

Defendant's fourth assignment of error is based upon the trial court's refusal to give defendant's instruction No. 18, which reads:

> "The Court instructs the jury that if you believe from the evidence in this case that prior to March 24, 1938, there were shortages existing in the accounts of the defendant, and that on June 8, 1938, E. E. Bowyer, in good faith, obtained an affidavit from Clark Deaver, which affidavit implicated the plaintiff, Charles O. Show, in the shortages alleged to exist in the accounts of the defendant prior to March 24, 1938, and that said affidavit was executed by the said Clark Deaver, without any threat, promise or inducement, and that said affidavit was such as would cause a reasonable person to believe that the said Charles O. Show was implicated in said shortages alleged to exist, then you should find for the defendant."

In view of plaintiff's theory of the case (1) that defendant did not have probable cause to motivate the prosecution, and (2) that the Deaver affidavit was made as a result of a threat to indict, or promise of immunity, the court's refusal to give the instruction was reversible error. We say this because the instruction was not substantially covered by other instructions.

We, however, find no error, as assigned in the fifth assignment of error, in the court's refusal to give defendant's instruction No. 20, which reads: "The Court instructs the jury that even though you may believe the plaintiff is entitled to recover, that the plaintiff is not entitled to recover for loss of time for failure to obtain or keep employment." If this were an action of libel or slander, plaintiff would have been entitled to recover for loss of time for failure to obtain or keep employment,

610

which may have resulted from the execution and publication of the Deaver affidavit, but in this action for malicious prosecution clearly no damages could ensue by reason of loss of time for plaintiff's failure to obtain or keep employment, which may have resulted from the alleged malicious prosecution, until plaintiff was indicted at the April, 1939, term of the Intermediate Court of Kanawha County. Because this instruction is too broad in scope of time and fails to direct the jury's attention to this phase of the case, the instruction was properly refused.

Inasmuch as a new trial will be required, we do not reach the sixth assignment of error: that the jury verdict is excessive.

Finally, defendant assigns as error that the verdict is without sufficient or substantial evidence to support it and is contrary to the law and evidence. In the first trial Deaver testified:

> "Well, in June of 1938, I was called into the office of Mr. Bowyer at the Mount Vernon by Mr. Bowyer, that is the proprietor or the manager of the Mount Vernon Dairy Company, and he told me that I was short and I said—I admitted taking $250. I promised to pay it back if he would make it in easy payments because I did not have a job at that time. I also had just got up out of bed with typhoid fever and I could not work for some time, and so I told him I would pay it back, and I still will pay the $250 back, but at that time when he asked me about it he said, 'Why should you take all the blame of this money?' He said, 'I know you got it all but why should you take the blame?' and left the impression that I should—that Charlie could be brought in on it, and he and I talked it over in his office about the affidavit of Mr. Show, that I would implicate Mr. Show in it."

At the third trial, as shown by the transcript of his testimony introduced at the instant trial, he testified that at the conference with Bowyer, at which Stewart was

present, that Bowyer said, "Why take all the blame?", but neither Bowyer nor Stewart told Deaver to implicate Show. However, in answer to the following questions, he gave the following answers:

"Q. Were you then asked to make an affidavit?
"A. Yes, sir.
"Q. By whom?
"A. By Mr. Bowyer. He asked me if I was willing to make an affidavit to that effect.
"Q. To what effect?
"A. To the effect that Charlie Show was implicated in the taking of this money."

In view of this contradiction, and Bowyer's and Stewart's denial, the testimony may not be highly credible. Nevertheless, we cannot say that it is incredible and beyond jury determination as to its truth or falsity, and the jury evidently believed that the affidavit was fraudulently obtained for the purpose of implicating Show. The affirmative answer of the jury to the interrogatory: "Was the affidavit of Clark Deaver, made on June 8, 1938, fraudulently obtained by E. E. Bowyer?" so indicates. In this regard it may be noted that the bonds of Deaver, Eads and Kidd did not cover the total shortages of these three men, and it was only by the inclusion of Show's bond in the amount of twelve hundred fifty dollars that the entire shortage was covered, and the amount thereof paid by the surety company. Assuming that Deaver's affidavit was obtained for the purpose of implicating Show, as we should do in view of the jury verdict, and the jury's right, as we view this evidence, to so find, this case does not differ in any substantial detail from the case presented in the record at the first trial in which this Court held on page 122 of the opinion in the former case that: "On the question of whether there was lack of probable cause and malice on the part of the defendant in connection with the prosecution under investigation, we think it clearly a case for jury determination." This holding on the former trial constitutes

the law of this case, and not coming within the exceptions stated in point 7 of the syllabus in *Pennington* v. *Gillaspie*, 66 W. Va. 643, 66 S. E. 1009, cannot be disturbed on this writ of error. *Atwater & Co.* v. *Fall River Pocahontas Collieries Co.*, 119 W. Va. 549, pt. 1 syl., 195 S. E. 99.

The foregoing disposes of all of the assignments of error. However, counsel for plaintiff urges that the affidavit of R. G. Lilly, counsel for defendant, made and presented to the trial court on the ground that it contained after-discovered evidence is not properly before this Court. This affidavit was presented subsequent to December 14, 1944, the date of the judgment, and February 7, 1945, the date of the order certifying the bill of exceptions. It therefore is not a part of the record. In *Snodgrass* v. *Charleston NuGrape Co.*, 113 W. Va. 748, 169 S. E. 406, this Court held that where the trial judge was not present when certain challenged remarks were made to the jury by counsel that they cannot be included in the record by affidavits of counsel incorporated in a bill of exceptions. "A record cannot be made in this manner."

For the foregoing reasons the judgment of the Circuit Court of Kanawha County is reversed, the verdict set aside, and a new trial awarded.

> *Judgment reversed; verdict set aside; new trial awarded.*