STATE OF WEST VIRGINIA

*v.*

LINDEN O. ALLEN

(No. 10015)

Submitted September 22, 1948. Decided October 12, 1948.

*J. G. F. Johnson* and *George G. Somerville,* for plaintiff in error.

*Ira J. Partlow,* Attorney General and *J. Chandler Curd,* Assistant Attorney General, for defendant in error.

Fox Judge:

The defendant, Linden O. Allen, was indicted in the Circuit Court of Mason County, for the murder of one John Buckle, alleged to have been committed in the month of June, 1947, in said county. He was tried on that indictment, and convicted of murder of the second degree. A motion to set aside the verdict was made and overruled, and judgment entered thereon that the defendant be confined in the penitentiary of this State for a period of from five to eighteen years. An exception was taken to the action of the court overruling said motion and rendering the judgment aforesaid. To said judgment we granted this writ of error.

The principal error assigned relates to the refusal of the trial court to give Instruction No. 12, offered by the defendant, and its action in modifying Instruction No. 9, offered by the State, both alleged errors relating to the failure of the court to instruct the jury as to the definitions of voluntary and involuntary manslaughter, and advising the jury of the penalty attached to the conviction for either of such offenses.

To make the point entirely clear, it will be necessary to quote Instruction No. 12, offered by the defendant, and refused by the court. Said instruction reads:

"The Court instructs the Jury, that murder in the first degree is any willful, deliberate and premeditated killing with malice aforethought.

The Court further instructs the Jury that before a killing can be murder in the second degree it must appear from the evidence beyond a reasonable doubt that the killing was done from malice: that is, from a wicked and depraved heart.

The Court further instructs the Jury that voluntary manslaughter is the unlawful killing of a human being in the heat of blood and sudden passion, upon adequate provocation, and not for malice.

The Court further instructs the Jury that involuntary manslaughter is for the unintentional killing of a human being in connection with the doing of a wrongful act."

Instruction No. 9, as offered by the State, was in the following language:

"*The Court instructs the jury that one of five verdicts may be found under the indictment in this case, if the evidence in the case so warrant: (1) murder in the first degree, (2) murder in the second degree, (3) voluntary manslaughter, (4) involuntary manslaughter and (5) not guilty.*

The court further instructs the jury that murder in the first degree is when one person kills another person unlawfully, wilfully, maliciously, deliberately and premeditatedly; that murder in the second degree is when one person kills another person unlawfully and maliciously, but not deliberately; *that voluntary manslaughter is when a person unlawfully kills another person without malice, but under sudden excitement and heat of passion; that involuntary manslaughter is where one person while engaged in an unlawful act, unintentionally causes the death of another person, or when engaged in a lawful act negligently causes the death of another person.*

The court further instructs the jury that murder in the first degree is punishable by death, or confinement in the penitentiary of this State for life, as the jury shall find in their verdict; that murder in the second degree is punishable by confinement in the penitentiary of this State not less than five nor more than eighteen years in the discretion of the court; *that voluntary manslaughter is punishable by confinement in the penitentiary of this State not less than one nor more than five years in the discretion of the court; that involuntary manslaughter is a misdemeanor and punishable by imprisonment in the county jail or fine or by both, in the discretion of the court.*"

(Emphasis ours.)

The trial court struck out of the said instruction, as offered, the language underscored in the above quotation.

When stricken, it is apparent that the court instructed the jury only on the definition and penalty for murder in the first and second degrees, and failed to instruct the jury on the crime of manslaughter, either voluntary or involuntary.

By Instruction No. 9, offered by the defendant, the court told the jury:

> "The Court instructs the Jury that the indictment in this case charges the following crimes, namely: Murder in the First Degree, Murder in the Second Degree, Voluntary Manslaughter and Involuntary Manslaughter.
>
> The Court further instructs the Jury that the law presumes that the defendant, Linden Allen, is innocent of all of the said crimes charged against him in said indictment, and that such presumption follows him throughout each and every step of his trial, and that it is *encumbent* upon the State to establish the defendant's guilt of any of said crimes by proving so clear, convincing and satisfactory in its nature as to convince the Jury, and each and every individual member thereof, of his guilt to a moral certainty, beyond all reasonable doubt and to the exclusion of every other reasonable hypotheses; and if the State has failed to prove by the evidence in this case every material allegation in the indictment, then the Jury must find the defendant, Linden Allen, not guilty."

The trial court filed a written opinion in which it stated its reasons for not setting aside the verdict of the jury, from which we learn that it was of the opinion that the evidence in the case did not justify an instruction on manslaughter. The effect of the court's instructions was to limit the jury to a finding of murder of the first or second degree, or an acquittal on the ground of self-defense, which ground was covered by instructions in the case. Obviously, it is necessary that we refer to the evidence in the case upon which the court acted, and upon which we must determine whether or not refusal to give instructions on manslaughter was error.

The evidence discloses that the defendant and the deceased, John Buckle, were each about nineteen years of age at the date of the crime alleged. The defendant and a friend by the name of Martin had been drinking beer during the afternoon of the day on which the homicide occurred, the defendant consuming from twelve to fifteen bottles of beer during the course of the afternoon. There was a community gathering at Millstone Church in a rural section of the county, and the defendant and Martin went to the meeting place. John Buckle, the deceased, had driven there in his brother's automobile. The defendant, in passing the Buckle automobile, tore from it an outside mirror and broke the same. The deceased was standing nearby, and may have made some exclamation or inquiry as to why the defendant had committed this act, but, without further conversation, struck the defendant with his fist, knocked him down, and leaped on him, and it is said struck him several blows with his fist. Martin was standing near. The deceased then arose from his position over the defendant. According to some of the testimony, although there is some confusion on this point, the defendant first said of Buckle: "He hadn't oughta done that", and then said: "I ought to kill you, you son-of-a-bitch", whereupon Buckle again struck him with his fist, knocked him down, and held him on the ground for sometime, probably striking him with his fist, and, according to the defendant, made an effort to reach out and get a rock which defendant thought would be used to wound and seriously injure him. Up to this point there does not seem to be any substantial conflict as to what occurred, but there is marked conflict in the testimony as to what followed. Martin, who was the only State witness present throughout the entire altercation, says that when Buckle let the defendant arise from the ground, after he had been knocked down the second time, and as Buckle started away, the defendant said: "I am going to kill you, you son-of-a-bitch.", and that immediately thereafter the defendant drew, from a holster on his hip, what is described as a hunting knife, and struck the deceased two blows, one in the back or side, and the

other in the chest, in front and just under the heart, the second blow penetrating the heart; and that the deceased made a few steps, fell to the ground and died shortly thereafter from one of the wounds so inflicted. The testimony of the defendant is that while on the ground, after he had been knocked down the second time, and while, as he claimed, the deceased was striking him with one hand, and reaching for what he thought was a rock with the other hand, and fearing of what might happen, he drew his knife and used it, cutting the deceased in the side· or back and then in the chest, not intending to kill the deceased, but only to protect himself. His contention is that the chest blow was pointed in an upward direction, while Martin testified that it was an overhand blow. The· testimony of the physician who performed the autopsy is that the chest wound ranged upward. The clothes worn by the defendant were bloody, and were removed by him shortly after the homicide, from which it is argued that the blood could not have been on the clothes except under the conditions claimed by the defendant, and especially not under the situation testified to by Martin. As the defendant left the place of the homicide, he threw away his hunting knife, but it was afterwards recovered, as were his clothes. The defendant was arrested that night, and on the day following made a statement to the prosecuting attorney, and a member of the department of public safety, to the effect that while he remembered going to Millstone Church, on the evening of the homicide, he had no recollection of what occurred at the time and place where John Buckle was killed. This, in short, is a statement of the evidence upon which the trial court acted. We express no opinion as to the force and weight of that testimony, in its relation to the verdict returned by the jury, but consider it only on the question of whether or not the court should have given an instruction bearing upon the offense of manslaughter, both voluntary and involuntary. The court did instruct the jury on the law relating to self-defense.

The general rule seems to be that: "If there·be evidence tending in some appreciable degree to support the theory

of proposd instructions, it is not error to give such instructions to the jury, though the evidence be slight, or even insufficient to support a verdict based entirely on such theory." 5 Michie's Digest, Va. and W. Va. Reports 864. This statement of law seems to represent the general trend of cases decided by this Court. In *State* v. *Taylor,* 57 W. Va. 228, 50 S. E. 247, it was stated in the body of the opinion that:

> "The propriety of an instruction always depends upon the evidence in the case. No proposition of law can be announced to the jury as applicable to a case, unless there is evidence tending to support every fact that must be found by the jury in order to make it applicable. A proper instruction never assumes the existence of facts, but it does assume that there is in the case evidence of certain facts. As the facts are generally disputed, the evidence of the plaintiff tends to prove one set, relevant and material to the issue, and that of the defendant another, and it sometimes happens that there are several issues so that the contentions as to facts, supported by evidence, are numerous, giving scope for several instructions, embodying different propositions of law. * * *"

In *State* v. *Clifford,* 59 W. Va. 1, 52 S. E. 981, it was held that where the evidence tends to prove manslaughter, the court might properly give instructions upon the theory of murder, if there was any evidence in the case tending to show the commission of such a crime, and that the defense of an accidental or unintentional killing does not preclude the giving of instructions, embodying the law relating to any offense which the evidence tends to prove, thus stressing the rule that instructions given should always depend upon the evidence in the case. In *Snedeker* v. *Rulong,* 69 W. Va. 223, 71 S. E. 180, a civil case, it was held:

> "If there be evidence tending in some appreciable degree to support the theory of proposed instructions, it is not error to give such instructions to the jury, though the evidence be slight, or even insufficient to support a verdict based entirely on such theory."

In *Barna* v. *Coal Co.*, 83 W. Va. 216, 98 S. E. 158, it was held:

> "If there is any appreciable evidence tending to support the theory of an instruction, the giving of it does not constitute reversible error, though it turns out on the final test that such evidence is not sufficient to support the verdict."

To the same effect is *Myers* v. *Cook*, 87 W. Va. 265, 104 S. E. 593. In *Barry* v. *Tyler* (Va.), 199 S. E. 496, it was held:

> "An instruction can be based on inferential or circumstantial evidence."

It will be noted that these cases generally state that it is not error to give an instruction based upon appreciable evidence, which supports the theory embodied in the instruction offered. There are a number of cases which hold that where no appreciable evidence for the theory appears from the evidence, the refusal of an instruction based thereon is not error. See *Williams* v. *Schehl*, 84 W. Va. 499, 100 S. E. 280; *State* v. *Hayes*, 109 W. Va. 296, 153 S. E. 496; *State* v. *Shelton*, 116 W. Va. 75, 178 S. E. 633; *State* v. *Lane*, 116 W. Va. 636, 182 S. E. 784. In our view of the matter, the holding of this Court that where there is appreciable evidence on a given theory it is not error to give an instruction thereon even where such evidence, in itself, would not sustain the theory, and that where there is not such evidence, an instruction is not warranted, argues that if there is such evidence to the extent of being appreciable, that is, requiring notice, an instruction should be given thereon, particularly in a criminal case. We believe this to be in line with the general authority throughout the country. In all trial litigation it is usual that both plaintiff and defendant advance theories and take positions in support of which testimony is introduced. The evidence so introduced may not be such as to control the case, nor justify a verdict upon any particular theory; but the jury, being called upon to decide upon the facts, is always entitled to know the legal effect of any evidence introduced, if that evidence be such as it would be entitled to consider in reaching a verdict.

That information can only be given the jury by an instruction.

The word "appreciable" seems to have a definite legal meaning. " 'Appreciable' means capable of being estimated, perceptible" and has been defined as "capable of being estimated; perceptible; as an appreciable quantity". 3 Words & Phrases 782. Black's Law Dictionary, 3rd Ed. 128. In *Ketterman* v. *Railroad Co.*, 48 W. Va. 606, 37 S. E. 683, where a motion to strike the evidence was involved, and where the question of the meaning of the word "appreciable" or "appreciably" was also involved, Judge Brannon, in speaking for the Court, said:

> "I answer that the evidence must be such as would forbid the court from setting the verdict aside. If that evidence is so weak as not to carry the case in favor of him who bears the burden of proof, so that a verdict based upon that evidence ought to be set aside, the court commits no error in sustaining a motion to exclude, because after verdict the same question comes to the court upon a motion for a new trial. Why go through with the formality of a verdict simply to set it aside?"

This language was correct, as applied to the case then before the Court. But, we do not think it has ever been applied in determining whether or not an instruction should be given either in a civil or criminal case, where a theory was advanced, and testimony introduced thereon which was appreciable, or which required consideration or was capable of being estimated. Under modern practice a motion to strike the evidence should be sustained, where, if a jury found a verdict based on that evidence, the same would have to be set aside, but, in our opinion, such a rule is not applicable to the question of giving an instruction as to which there is appreciable evidence sustaining the theory presented thereby.

We think it can be correctly stated that it is usual to give instructions on manslaughter, where a defendant is being tried on an indictment for murder, and there is any appreciable evidence on the question of hot blood,

or lack of malice, in the case. In extreme cases the rule is different, as is illustrated in *State* v. *Stephenson,* 114 W. Va. 458, 172 S. E. 533. The established facts in that case did not admit of any verdict other than murder in the first degree, or an acquittal, and this Court held:

> "In a trial for murder, where the evidence does not admit of any other conclusion than of murder in the first degree, an instruction on a lesser grade of the offense charged, need not be granted."

In *Bradshaw* v. *Commonwealth* (Va.), 4 S. E. 2d 752, the court said:

> "We have seen that in an extreme case it may not be necessary for the court to instruct a jury as to the law governing manslaughter, just as it would not be necessary for the court to instruct a jury as to the law of first degree murder where the evidence established beyond question that the killing was without malice, unpremeditated and accidental, due only to the negligent performance of some lawful undertaking, and this though the indictment charged murder. It would be futile because a verdict of first degree murder would have to be set aside, and it would be misleading because the jury might construe it as an indication to do something which it had no right to do. But between these two extremes, the jury has wide latitude, and into that field most cases fall. It should be instructed as to the degrees of homicide and as to the punishment therefor provided by statute. This rule is universally applied unless the case is plain beyond perhaps."

This statement of the Virginia court seems to us to set forth the principles which should govern trial courts in cases like that now before us.

In *State* v. *Whitt,* 96 W. Va. 268, 122 S. E. 742, we held that jurors are not presumed to be familiar with the constituent elements of the various degrees of homicide, and that, on the facts of that case, an instruction on manslaughter was proper. In *State* v. *Roberts,* 122 W. Va. 536, 11 S. E. 2d 172, the court, at the instance of the State, gave an instruction which told the jury that any one of

five verdicts might be found under the indictment, defined the nature of the various offenses covered thereby, and instructed the jury as to the punishment for each, and the same was held to be proper, and it was stated that the refusal to give such instruction was held to be error in *State* v. *Whitt, supra.* In *Tucker* v. *Commonwealth* (Va.), 167 S. E. 253, it was held that:

> "Instruction that, if jury found accused guilty of murder, they·should state degree, held erroneous in failing to state that, if they found him not guilty of murder in either degree, they could convict him of voluntary manslaughter."

In that case it was held that the evidence required the jury to find whether the homicide was murder, manslaughter or committed in self-defense. In our opinion, it is a well settled rule in this State that, except in extreme cases, where no possible verdict other than murder of first or second degree or an acquittal, could be justified, and where there is appreciable evidence of any other grade of homicide, the jury should be given an instruction defining the offenses of voluntary and involuntary manslaughter, along with the other offenses alleged in the indictment, and advising the jury of the penalty imposed by law for each.

We are, thus, presented with the single question whether the evidence in this case was of such a nature as to rule out all possible justification for a verdict of either degree of manslaughter. In deciding this point, we do not mean to express any opinion as to the correctness of the jury verdict, based on the instructions which the trial court gave in the case. We are of the opinion, however, that there was sufficient evidence and circumstances in the case to call for the giving of an instruction such as Instruction No. 9, offered by the State, and refused by the trial court, as offered, and substantially embodied in Instruction No. 12, offered by the defendant, and refused. In our opinion, the modification of Instruction No. 9, offered by the State, was error. If we give any consideration to the testimony of the defendant, then undoubtedly one of the instructions offered should have been given.

There is sharp conflict between what the defendant says as to how the homicide occurred, and the testimony of the witness, Martin, who testified for the State. The jury had the right to believe either. On the other hand, if we disregard the evidence of the defendant, there would seem to be little in the case upon which the verdict of manslaughter in either degree would rest. We are of the opinion that if the testimony introduced in this case was deemed to be sufficient to justify giving of the instruction on the theory of self-defense, based entirely on defendant's testimony, it was sufficient to require the giving of an instruction on manslaughter, based on the same testimony, and in refusing to do so, we think the trial court erred.

In one or more of instructions offered by the State there is reference to what the court termed a "quarrel", and exception is taken to the use of that word or expression, because it is said the evidence does not support the theory that there was a quarrel. We do not think there is any merit in this assignment of error. There was an unfortunate encounter between the two young men and it is unimportant what we call it. Then, inasmuch as the case must be retried, we think pains should be taken not to lay too much stress on the justification of the deceased in striking the defendant, on account of defendant's unwarranted destruction of property. Of course, reasonable interference to prevent destruction of property is always justified. But completed destruction of or damage to property is not, alone, sufficient to justify an assault. This point has little to do with the real merits of the case, and we would not be disposed to reverse the case upon any supposed defect in the instruction given on that point.

The judgment of the Circuit Court of Mason County is reversed, the verdict set aside, and a new trial awarded.

*Judgment reversed; verdict set aside; new trial awarded.*