STATE OF WEST VIRGINIA

*v.*

WILLIAM ARLIE HAYES, *et al.*

(No. 10370)

Submitted September 6, 1951. Decided October 23, 1951.

Fox and HAYMOND, JUDGES, dissenting.

*K. K. Hall,* for plaintiffs in error.

*William C. Marland,* Attorney General, *Thaddeus D. Kauffelt,* Assistant Attorney General, for defendant in error.

RILEY, JUDGE:

In the Circuit Court of Boone County, the defendants, William Arlie Hayes and Earl Dennis Chapman, each nineteen years of age, and residing at Culloden in Cabell

County, were jointly indicted, tried and convicted of grand larceny of a quantity of copper cable and ten railroad frog switches.

On July 20, 1950, at the suggestion of the defendant, William Arlie Hayes, the defendants drove from their home in Cabell County to Jarrell's Branch in Boone County, in a Dodge Pick-up Truck, borrowed from the father of the defendant Chapman, for the purpose of obtaining metal to be sold as junk. In the afternoon of that day they drove to a slate dump of the Eastern Gas and Fuel Associates, evidently a Massachusetts trust, which was also used as a supply yard. There they loaded on the truck a quantity of copper feeder cable and ten frog switches of a total value of three hundred and twelve dollars, which had been pointed out to the defendant Hayes by his uncle, Ray Martin, as abandoned property. The slate dump was located wholly on the property of Eastern Gas and Fuel Associates, and along or near the latter's private road which led to the property of Eastern Gas and Fuel Associates from the public road.

The State introduced evidence to the effect that, while the defendants were loading the material on the truck, another truck approached, and the defendants ran up the hill and hid in the woods until it had passed. This the defendants deny, but they testified they were picking berries near the slate dump when the other truck approached. After loading the truck the defendants drove away, and were arrested near Danville by a Deputy Sheriff of Boone County, who had been notified of the alleged theft by an employee of Eastern Gas and Fuel Associates.

The deputy sheriff testified that immediately prior to the arrest his attention was directed to the truck, in which he observed a length of feeder cable and some railroad frogs lying uncovered in the back thereof. He further testified that defendants told him that they had purchased the equipment, but, when he asked them for a bill of sale, they were unable to produce one. The deputy sheriff then arrested the defendants, and took them to the county jail.

At the county jail defendants were questioned by Corporal G. C. Scott, a member of the Department of Public Safety, who took separate written statements from the defendants, which, over objection, were admitted into evidence as State's Exhibit No. 1 and State's Exhibit No. 2, which statements read as follows:

"Madison, West Virginia, July 20, 1950.

"STATEMENT OF EARL DENNIS CHAPMAN

"I left home this morning around 9:30 A. M. and I picked up William Arlie Hayes at Sovines Sugar Market and we came to Hurricane, W. Va. where we moved Raymond Kerns for three dollars and took it in gasoline and oil. Yesterday William Hayes had told me where there was some copper and scrap iron at a State dump at Wharton, W. Va. We left Hurricane around 12 P. M. going to Wharton. When we got to Bim we turned across the creek and went up to the State Dump and started loading the copper feeder cable into the truck. Another truck came by and Hayes and I ran up the hill and hid in the woods until it went by. We came back down and finished loading the copper. Then we started loading the frogs. We loaded a few and another truck came by and we got in the truck and left. When we got to Danville, W. Va. a Deputy Sheriff stopped us and brought us to jail.

"I have read the above and certify it is true and correct.

"Signed Earl Dennis Chapman.

Witnesses:

    Cecil Marcum

    Princy Jarrell."

"Madison, West Virginia, July 20, 1950.

"STATEMENT OF WILLIAM ARLIE HAYES

"Earl Chapman and I left Hurricane around noon July 20, 1950 in Chapman's pickup truck

for Wharton, W. Va. Some of the boys near Barboursville and my home had told me that there was a lot of junk around Wharton. A *maetay* and a Sovine boy; Raymond Kerns, Culloden, W. Va. and Bob Guthrie, Culloden, W. Va. told us about this junk. We drove to Wharton and turned left across the bridge where the school house burnt and went up the hollow to the State Dump and turned around and started loading up. We got one long piece of feeder copper cable, then we got a number of iron frogs, which are used for track in the mine. We left and came to Madison where an officer stopped and arrested us. We were taking the junk home and the next day we would have taken it to the junk yard.

"I have read the above and certify it is true and correct.

"Signed William Arlie Hayes

"Witnesses:

G. M. Scott."

At the time these statements were admitted, the court instructed the jury that Chapman's statement should be considered as evidence on the question of that defendant's guilt or innocence, and that Hayes' statement should be considered only as to the question of his guilt or innocence: "In other words", the court instructed, "these statements are severally evidence to be considered by you as against the respective makers of these respective statements."

Defendants testified at the trial that they lived in a vicinity in which there were no coal mines, and they adduced evidence to the effect that they were unfamiliar with the operation of coal mines and did not know whether the mine of Eastern Gas and Fuel Associates was in operation or if the property had been abandoned.

At the trial the defendants demurred to and moved to quash the indictment on the ground that the "Eastern Gas and Fuel Associates" was not an entity at law, and therefore, ownership was not properly alleged, which

demurrer and motion were overruled. The defendants then entered a plea of not guilty to the indictment, and, the jury having been empanelled, the defendants presented the sole defense that they believed the property had been abandoned.

At the trial the court refused to give defendants' instructions Nos. 1, 4, 5, 7, 10, 11 and 12, based upon defendants' theory of defense that the property taken had been abandoned. Likewise the court refused to give defendants' instructions Nos. 18, 21, 22 and 23, which dealt with the question of reasonable doubt and the elements of the crime which the State must prove before a verdict of guilty could be returned by the jury.

The jury returned the verdict: "We, the jurors. We jury find the defendants guilty *with recommend minimum* sentence and also recommend probation." Counsel for defendant, having objected to the verdict, as returned, the court asked the clerk to hand him the indictment, on the back of which the above-quoted verdict had been written by the jury. The court then amended the verdict to read: "We the jury find the defendants guilty as charged in the within indictment and recommend to the Court that the defendants be probated." The court then instructed the jury to retire to its room to ascertain whether the verdict written by the court was the one the jury intended to return. The jury then retired and returned later with the verdict as written by the court, which was signed by A. C. Powell, as foreman.

Counsel for defendants then objected to the verdict as amended, "for the reason that it tended to mislead the jury into believing that probation was a required part of the sentence under such verdict," which objection the court overruled.

Thereupon counsel moved the court, after sentence of one to ten years in the State Penitentiary had been pronounced upon the defendants, that the defendants be granted probation, in accordance with the recommendation of the jury, but the court, a special judge sitting in

the absence of the regular judge, stated that the matter of probation would be left to the regular judge of the Circuit Court of Boone County, and that he, as such special judge, would recommend to the regular judge that the recommendation of the jury with reference to the matter of probation be accepted. *

The pertinent part of the indictment, under which the defendants were convicted, reads: "William Arlie Hayes and Earl Dennis Chapman on the 20th day of July, 1950, in the said County of Boone, One Hundred Feet of Copper Feeder Cable, of the Value of $112.00, and Ten Frog Switches of the Value of $200.00 of the Total Value of Three Hundred Twelve Dollars $312.00 of the money, goods, effects and property of Eastern Gas and Fuel Associates, Feloniously, did steal, take and carry away against the peace and dignity of the State. Found at the October, 1950, Term of said Court upon the testimony of G. M. Scott, duly sworn in open court to testify the truth and sent before the grand jury this 9th day of October, 1950."

On defendants' motion that the court set aside the verdict of the jury and grant a new trial, counsel for defendants assigned as one of the grounds in support thereof that after the verdict of the jury counsel for the first time discovered that Charles Stone, one of the jurors, had served as a petit juror in the Circuit Court of Boone County during the period of the past two years, as shown by the affidavit of the Clerk of the Circuit Court of Boone County. This juror had on his *voir dire* stated that he had not served on a petit jury in Boone County within the past two years, and on the basis of this statement counsel for defendants did not challenge this juror on the ground of his disqualification.

The errors relied upon here are: (1) The court erred in overruling the defendants' demurrer and motion to quash the indictment; (2) the court by word, tone and demeanor intimated his opinion on the facts in issue; (3) the court improperly refused certain instructions of-

fered by the defendants on their theory that the property alleged to have been stolen was abandoned and instructions as to reasonable doubt; (4) the court improperly permitted the written statements of the defendants to be read to the jury as confessions; (5) it was error for the court to amend the verdict of the jury and thereby influence the jury in its verdict; and (6) the juror, Charles Stone, was disqualified, and this disqualification alone was sufficient to ground the defendants' motion that the verdict of the jury be set aside and a new trial awarded.

Defendants' counsel state in support of their first assignment of error that the trial court erred in overruling defendants' demurrer and motion to quash the indictment, for the reason that the indictment is defective in that it alleges ownership of the property charged to have been stolen was in "Eastern Gas and Fuel Associates." In this regard it is contended that the indictment does not sufficiently inform the defendants as to the ownership of the property. With this position we do not agree: the very word "Associates" indicates living persons associated, evidently constituting a voluntary organization, which, under Code, 47-9A-1, as well as under the theory of trusts prevailing in this jurisdiction, is a business trust commonly known as a Massachusetts trust. Code, 47-9A-1, provides, in part: "Any persons who are now or who have heretofore been voluntarily associated together for the transaction or doing of business under and pursuant to the terms and provisions of a declaration of trust or articles or agreement of association, commonly designated as a Massachusetts trust or business trust, or any other lawful voluntary association by whatever name known, may purchase, acquire, hold, deal in, sell, lease, convey, exchange, pledge, mortgage and encumber any real estate or personal property or interest therein within this State, * * *." See generally an article entitled "Business Trusts and Their Relation to West Virginia Law," appearing in 28 W. Va. Law Quarterly 287. It has been held that where property charged to have been stolen is alleged to be the property of a corporation by name only,

it.is unnecessary to aver the existence of the corporation, and, after verdict, the court is bound to presume that on the trial the capacity of the corporation to hold property is proved to the jury or admitted by the defendants. 12 M. J., Larceny, Section 14; *Lithgow* v. *Commonwealth,* 2 Va. Cas. (4 Va.) 297. At the trial in answer to the question directed by the court, the plaintiff's witness, John Wells, who testified that he is superintendent of Eastern Gas and Fuel Associates' Wharton No. 1 mine, located at Wharton, testified, though rather indefinitely, that Eastern Gas and Fuel Associates "is a voluntary corporation of Masachusetts, I believe"; and that the "Associates" were doing business in the State of West Virginia.

Likewise we perceive no merit in defendants' assignment of error No. 2, that the court by word, tone and demeanor intimated his opinion on the facts in issue. This assignment is based upon questions directed to said John Wells, superintendent of Eastern Gas and Fuel Associates, and Roy Asbury, deputy sheriff who arrested defendants, and the defendant Hayes, which questions and answers are as follows:

John Wells—Direct—

"The Court: Boone County, West Virginia?

"A. Yes, sir.

"The Court: Mr. Hall, he didn't answer. It is necessary that the crime was committed in the county in which the trial is conducted."

Roy Asbury—Direct—

"The Court: Was there any inducement made to them, or promise of immunity, or benefit, for the making of that statement, or to induce them to make that statement?

"A. No, sir.

"The Court: Was it freely made, and voluntarily made, by these defendants? Both of them, or one of them?

"A. You mean written statement?

"The Court: No, no. I mean oral statement.

"A. Yes, sir. I just asked them, and they told me.

"Q. [by Prosecuting Attorney C. E. Hall]: If you are through I will ask about what he told him.

"The Court: You made no promises to them, or threats to them, to induce them to make the statement.

"A. No, sir."

William Arlie Hayes—Direct—

"The Court: Did you ask anybody if you could get the property when you boys went up there?

"A. No, sir.

"The Court: You knew there was a coal mine there that was operating coal.

"A. I didn't know whether it was operating or not.

"Q. [K. K. Hall]: You knew it was in operation there.

"Counsel for State, (C. E. Hall): I object."

In so holding on the immediate question, we are fully aware that this Court has held that a jury in a felony case is the trier of facts, and that the trial judge cannot in any manner indicate to the jury his opinion on any material fact in the case. In the syllabus to the case of *State* v. *Perkins*, 130 W. Va. 708, 45 S. E. 2d 17: " 'In the trial of a criminal case the jurors, not the court, are the triers of the facts, and the court should be extremely cautious not to intimate in any manner, by word, tone, or demeanor, his opinion upon any fact in issue.' Pt. 7, Syl., *State* v. *Austin*, 93 W. Va. 704", 117 S. E. 607.

But this Court held in *State* v. *McCausland*, 82 W. Va. 525, 96 S. E. 938, syl. 6: "It is the duty of the trial judge in any cause to refrain from expressing any opinion upon

the weight to be given to the evidence of any witness, but it is likewise his duty to see that in the examination of witnesses they understand the questions propounded to them before they are required to answer, and that counsel in asking a question does not place upon the witness's former statement a strained or unwarranted construction." We think that the special judge who tried this case, who had experience both as a trial lawyer and a circuit judge, was within his province in examining the witnesses. The purpose of that examination was evidently to elicit facts material to the case, and the examination did not indicate the judge's opinion upon any fact in issue. See 53 Am. Jur., Trial, Section 75.

The third assignment of error is that the court improperly refused certain instructions offered by the defendants on their theory that the property alleged to have been stolen was abandoned, and certain instructions as to reasonable doubt. It is true that the court refused to give defendants' instructions Nos. 18, 21, 22 and 23, which dealt with reasonable doubt and the elements of the crime charged. These instructions, however, were amply covered by the defendants' instructions Nos. 3, 8, 12A, and 16. "It is not error to refuse instructions on 'reasonable doubt' the substance of which has already been given in other instructions." *State* v. *Cook*, 94 W. Va. 166, pt. 3 syl., 117 S. E. 777.

But the State contends that the court's action in refusing defendants' instructions Nos. 1, 4, 5, 7, 10, 11 and 12, dealing with defendants' theory that the property was abandoned, was not error for two reasons: (1) That there was not sufficient evidence in this case from which the jury could reasonably find that the property taken was actually abandoned, or that defendants, in good faith, believed that to be so; and (2) that the instructions refused on the question of abandonment were covered by defendants' instruction No. 2.

We think that the fact that the uncle of one of the defendants had told him a year before the taking that

the cable and railroad frogs had been abandoned, coupled with the fact that they were on a slate dump, the frogs being rusty, and the cable covered with a greenish deposit, and that further there is substantial evidence in this case that the cable and frogs were covered with dirt, and that the cable, at the time it was taken, was partially covered by the slate on the slate dump, forms a basis for submission to the jury by instructions of defendants' defense of abandonment.

In this jurisdiction, where there is competent evidence tending to support a pertinent theory in a case, it is error for the trial court to refuse a proper instruction, presenting such theory when so requested. *State* v. *Foley,* 128 W. Va. 166, 35 S. E. 2d 854; and *Show* v. *Mount Vernon Farm Dairy Products,* 128 W. Va. 598, 37 S. E. 2d 459. Under this well established rule, unless defendants' instructions Nos. 1, 4, 5, 7, 10, 11 and 12 were covered by defendants' instruction No. 2, the refusal of the former instructions is reversible error. The refused instructions specifically directed the jury's attention to defendants' theory of the case that the property taken had been abandoned, or that the defendants, in good faith, in taking the property believed that it had been abandoned.

Defendants' instruction No. 2 reads: "THE COURT INSTRUCTS THE JURY that the intent of the *accuseds* at the time of the taking of the cable and frog switches in the indictment mentioned, is a material fact in this case and that before you can convict them of the offense charged, you must be convinced beyond all reasonable doubt that at the time they took the property, they took it believing it to be the property of the owner and intending wholly to deprive the owner of it." This instruction properly told the jury that before the jury could convict the defendants, it must be convinced beyond all reasonable doubt that at the time the property was taken, the defendants took it, believing that it was the property of the owner and for the purpose of depriving the owner wholly of it; but it did not with sufficient directness pre-

sent to the jury the defendants' theory of defense as to the abandonment of the property taken, such as defendants' instruction No. 1, which read: "THE COURT INSTRUCTS THE JURY that abandoned property is property which has been thrown away or the possession of which is voluntarily forsaken by the owner, in which case it becomes the property of the first person to claim it, and if you believe from the evidence in this case that the defendants took the property described in the indictment believing it to have been abandoned, then there was no intent to steal and you must find the defendants. not guilty."

In our opinion, the written statements of the defendants made to Corporal Scott were properly read to the jury; but because these statements are not admissions of guilt, they could not be read to the jury as confessions. They, however, in essential details contradict the defendants' testimony on the witness stand as to certain essential matters, and there was no error in their admission.

In the fifth assignment of error it is contended that the court's procedure in amending the verdict of the jury tended to influence it in its verdict. Only a casual examination of the verdict, as originally rendered by the jury, shows that it was ineptly drawn, and that it was the plain duty of the trial judge to make the amendment. The original verdict read: "We, the jurors. We jury find the defendants guilty *with recommend minimum* sentence and also recommend probation." The court in the amended verdict simply corrected the inept language of the verdict as rendered by the jury. In the verdict of the jury, as originally rendered, there was a recommendation of probation, and the fact that the regular judge did not deign to grant probation did not, in our opinion, influence the jury.

In our opinion, the verdict of the jury in this case was based upon the jury's finding that the defendants were, in fact, guilty. The recommendation of probation con-

tained in the original, as well as the amended, verdict of the jury is surplusage, and did not and could not have prejudiced the jury.

The sixth assignment of error that the juror, Charles Stone, was disqualified, and that this disqualification alone was sufficient to ground the defendants' motion that the verdict be set aside and a new trial awarded, presents a situation which necessarily, under the decisions of this Court and courts in other jurisdictions, attracts our immediate attention. At this point we are called upon to reexamine and reappraise the case of *State* v. *Clyde Beale*, 104 W. Va. 617, 141 S. E. 401, in which case Beale was convicted in the Circuit Court of Mingo county of murder of the first degree without recommendation, and with sentence to be hanged. In that case a juror, Carr, who had served on a jury in the same circuit about fifteen months prior thereto, was challenged on his *voir dire* on the ground of his prior jury service, but he was permitted to serve on the jury, notwithstanding the statute at that time provided (Chapter 116, Section 3) : "But the name of no person shall be put on such list who shall have been drawn and actually served as a petit juror within a period of two years * * *. Provided, that in any county wherein there is a criminal or intermediate court or court of common pleas, service on a petit jury in any such court shall not *exempt* a juror from jury service in the circuit court, nor vice versa." (Italics supplied.)

This Court in the *Beale* case held that the then provision of the statute provided only for exemption from jury service of one who has served on a jury within the two-year inhibitory limitation, and stated, evidently by way of *dictum:* "The statute, then, to have the effect of a disqualification must be plain; and if the words used be consistent with a mere exemption as with a disqualification, they will be construed in the former, rather than the latter, sense. *Booth* v. *Commonwealth,* 16 Grat. 519." After the decision in the *Beale* case, the statute was amended by Chapter 80, Article 1, Section 4, Acts of the Legislature, 1945, which amended and reenacted Code, 52-1-4, and

which reads as follows: " * * * The name of no person. shall be put on such list who shall have been drawn and who actually served as a petit juror in any court of record. within a period of two years prior thereto, or who shall have requested the jury commissioners or either of them,. by himself or another person, to have his name placed on such list; and any such person shall be disqualified from. serving as a juror for the period of two years from the date of such service or from the time of making such request."

If this Court should follow the *dictum* in the *Beale* case,. the juror Stone was disqualified to serve on the jury in the instant case in the Circuit Court of Boone County. This immediately gives rise to the question whether a motion to set aside a verdict, after rendition, on the ground of the disqualification of a juror, because of prior service, should be entertained in this jurisdiction.

In this jurisdiction there is a well recognized and well established rule of authority to the effect that, notwithstanding a juror is disqualified, a motion to set aside a verdict, after its rendition, will not be granted in the absence of a showing of prejudice. Perhaps the leading case in this State is the case of *State v. Harris*, 69 W. Va. 244, 71 S. E. 609, in which the syllabus reads as follows: "The general rule, inhibiting allowance of a new trial for matter constituting a principal cause of challenge to a juror, existing before the juror was elected and sworn, unknown to the complaining party until after verdict,. not disclosed on a thorough *voir dire* examination, and undiscoverable by the exercise of ordinary diligence, unless it appears from the whole case that the complainant suffered injustice by reason of the disqualification, applies in criminal cases and to disqualification by reason of relationship to the prosecuting witness." This case has: been consistently followed in *Malone* v. *Monongahela. Valley Traction Co.*, 105 W. Va. 60, 69, 141 S. E. 440; *State* v. *Worthington,* 109 W.Va. 449, 452, 155 .S.E. 313; *Watkins* v. *Baltimore and Ohio Railroad Co.,* 130 W. Va. 268, syl.,

43 S. E. 2d 219. So, though we are of the opinion, that the amendment of the statute immediately after the decision of this Court in the *Beale* case indicates a clear legislative intent that service of a juror within the two-year inhibitory period does not immediately render that juror exempt, but it disqualifies him, and, if a challenge had been made to his service on the jury, his retention thereon would have been reversible error. But there was no challenge to the qualification of this juror, though if diligence had been made through the circuit clerk's office, it could have been ascertained that Stone had served as a petit juror within the two-year inhibitory period, and therefore the ruling in the *Beale* case would not apply. However, notwithstanding that the juror Stone was, in fact, disqualified under the present statute, as distinguished from the statute controlling at the time the *Beale* case was decided, we are not at liberty to hold that the ruling of the Circuit Court of Boone County constitutes reversible error, because by no stretch of the imagination can it be said that the presence of Stone on that jury tended to prejudice the defendant in the least. So, applying the rule in *State* v. *Harris, supra,* we think that the sixth ground of error did not in the instant case constitute reversible error.

Having answered the six assignments of error set forth in defendants' brief, we, for the sole reason set forth in our discussion of defendants' third assignment of error as to the refusal of instructions based on defendants' theory of defense that the property had been abandoned, reverse the judgment of the Circuit Court of Boone County, set aside the verdict and award a new trial.

> *Judgment reversed;*
> *verdict set aside;*
> *new trial awarded.*

Fox, PRESIDENT, dissenting:

I respectfully dissent from the result which will follow from the opinion filed by the majority in this case. I do not question the correctness of any point of the syllabus.

My dissent goes to the application of Point 4 of the Syllabus which reads:

"In this jurisdiction where there is competent evidence tending to support a pertinent theory of a case, it is error for the trial court to refuse a proper instruction, presenting such theory, when so requested."

No one will, I think, question the correctness of this statement. There are many cases which sustain it, and some of them go even farther. In the recent case of *State v. Allen,* 131 W. Va. 667, 49 S. E. 2d. 847, it was held:

"Where, on the trial of an indictment for murder, the homicide charged is clearly proved or admitted, and there is appreciable evidence in the case tending to show the commission of a particular offense embraced within the charge contained in the indictment, it is error not to instruct the jury on the nature, elements and punishment for the offense to which such evidence relates, when request therefor is made either by the State or the defendant."

In that case, the defendant was indicted for murder which, as is well known, charged the offense of murder in the first degree, second degree, voluntary manslaughter and involuntary manslaughter. In other words, had the evidence warranted, there might have been a verdict for either one of those offenses, or a verdict of not guilty. The trial court was of the opinion that, while the indictment covered all of said offenses, the evidence was such that there could not be a verdict of either voluntary or involuntary manslaughter, but that the jury must return a verdict of either first or second degree murder, or that the defendant was not guilty, and therefore refused to give tendered instructions on manslaughter. On writ of error to this Court, we made the holding quoted above because we thought there was "appreciable evidence" in the case to show the commission of manslaughter, either voluntary or involuntary.

In that case, we went into the authorities on this question at some length, and we do not think that the syllabus

point used in this case departs in any way from the principle laid down therein. But the statement of law that where there is appreciable evidence in a case on a certain point of defense, the court should give an instruction on that point carries with it, as corollary thereto, the proposition that where there is no appreciable evidence on a given point of the case, the court should not confuse the jury by giving an instruction thereon. This principle is well established by our authorities. As late as 1948, in the case of *State* v. *Craig,* 131 W. Va. 714, 51 S. E. 2d 283, we held:

"The giving of an instruction based on an assumption of facts which is not supported by the evidence constitutes reversible error."

and

"An instruction which tends to confuse or mislead the jury is properly refused."

In the body of the opinion, the Court said:

"* * * As already pointed out, however, the evidence wholly fails to show that the conduct of the defendant in causing the injury sustained by White in the collision constituted either an unlawful act or a lawful act committed in an unlawful manner, and, because there was no such evidence upon which to base the instruction, the action of the trial court in giving it was reversible error. *State* v. *Shelton,* 116 W. Va. 75, 178 S. E. 633; *State* v. *Zinn,* 95 W. Va. 148, 120 S. E. 387; *Penix* v. *Grafton,* 86 W. Va. 278, 103 S. E. 106; *State* v. *Donahue,* 79 W. Va. 260, 90 S. E. 834."

See also *Bloyd* v. *Pollock,* 27 W. Va. 75; *Bond* v. *National Fire Insurance Company,* 77 W. Va. 736, 88 S. E. 389; *Jones* v. *Smithson,* 119 W. Va. 389, 193 S. E. 802.

There was, in my opinion, no appreciable evidence introduced in this case warranting the Court in giving to the jury any instruction upon the theory of abandonment. According to the opinion of the majority, the defendants testified at the trial that "they lived in a vicinity in which there were no coal mines, and they adduced evidence to

the effect that they were unfamiliar with the operation of coal mines and did not know whether the mine of Eastern Gas and Fuel Associates was in operation or if the property had been abandoned." That is a clear statement that they did not know whether or not the property, with the larceny of which they were charged, had been abandoned, and in itself is sufficient to bar any instruction on that point. The only other evidence, tending to show that the property alleged to have been stolen had been abandoned, was that an uncle of one of the defendants had told him a year before the alleged larceny that the cable and railroad frogs here involved had been abandoned, without any showing that the uncle had any knowledge of that fact or any authority of any kind to make such a statement. The majority opinion contains the astonishing statement:

> "We think that the fact that the uncle of one of the defendants had told him a year before the taking that the cable and railroad frogs had been abandoned, coupled with the fact that they were on a slate dump, the frogs being rusty, and the cable covered with a greenish deposit, and that further there is substantial evidence in this case that the cable and frogs were covered with dirt, and that the cable, at the time it was taken, was partially covered by the slate on the slate dump, forms a basis for submission to the jury by instructions of defendants' defense of abandonment."

This means that if a wayfaring man with a truck passing along a highway, finds any old machinery, frogs, steel rail, copper wire or other machinery or material in connection with a coal mine or manufacturing enterprise, and the same is on a slate pile, partially covered, or the copper wire has become green, on the property of the owner of the mine or plants, he is at liberty to assume that it has been abandoned, especially if a year before, in a conversation with his uncle, he was told such property had been abandoned. This State, being a coal mining State, is filled with worked-out mines where much material is left on the property until further use can be found for it. Equipment used in ore and gas develop-

ment, the lumber industry, and many other types of enterprise, are left on property throughout the State. The effect of this decision is to make such property fair prey for everyone to take it at his will, if he can find someone to tell him it has been abandoned, and if he can find a jury to believe his story. The jury did not believe the story in this case, and found the defendants guilty, and the defendants assume, in this Court, that if the requested instructions on abandonment had been given, a different verdict might have been returned. This, of course, is possible; and if there had been appreciable evidence on the question of abandonment, I would say that the trial court should have given an instruction on the subject. My point is that there is absolutely no evidence in this case upon which the jury or the court would have been justified in holding that the property here involved had been abandoned. I do not go so far as to say that people may not abandon property; and there are many ways of establishing that fact. The mere fact that the elements in a short time afford evidence of rust and decay, or that somebody's uncle advised his nephew that property had been abandoned, furnishes absolutely no evidence of abandonment.

I am authorized to say that Judge Haymond concurs in this note of dissent.